2805.   CAIN *v.* MAYOR AND COUNCIL OF CORDELE.

The finding of the municipal court against the defendant was without any evidence to support it, and the judge of the superior court erred in overruling the certiorari.

DECIDED NOVEMBER 29, 1910.

Certiorari; from Crisp superior court—Judge Whipple.  June 8, 1910.

*J. T. Hill, J. W. Dennard,* for plaintiff in error.

*Walter F. Hall,* contra.

HILL, C. J.  Cain was convicted by the mayor and council of the City of Cordele of a violation of a city ordinance, in keeping and having on hand, for the purpose of illegally selling, dealing and bartering in the same, whisky, beer, malt, and other vinous liquors within the City of Cordele.  He certioraried this finding to the superior court; the certiorari was overruled, and he excepted.  The only question raised in the record is whether the finding was contrary to law, as being without any evidence to support it.

The following is, in substance, the evidence in behalf of the city: Henry Lucas testified: I can neither read nor write.  A party of us negroes raised $15 with which to purchase liquor for ourselves. We wanted 20 quarts, and the money was turned over to me as the agent of the other parties.  Not knowing how to read or write, and having confidence in Mr. Cain (the defendant), I went to him and got him to order the whisky for me.  He gave me a receipt for the $15 at the time I gave him the money.  A few days later he gave me back $2.60, claiming that I had overpaid him.  The $2.60 was returned to me after the whisky was received by the city officers.  The chief of police of the city testified that he got a drum of liquor from a negro drayman's wagon as he was leaving the A., B. & A. freight depot.  It was seized on the public streets of Cordele and was marked to John Cain, and Mr. Cain made the statement in the office of the chief, on the afternoon when the whisky was seized, that it belonged to himself and others.  The

liquor was never carried to Cain's house, but was seized before the wagon had gotten away from the depot. The negro drayman testified that he was hired by Mr. Cain to haul the drum of whisky for him from the freight depot to his residence, and that the whisky was seized and taken from his dray by the policeman. This was all the evidence for the city.

The defendant's statement was, in substance, as follows: I was approached by Henry Lucas on or about the 12th day of February, 1910, who wanted me to order him 20 quarts of whisky and gave me $15 to do it with. I took the money and went from there to Thompson's livery stable. There were several in Mr. Thompson's office, and I mentioned the incident and we made up a purse and ordered a drum of whisky. The names of the different parties, and the amounts ordered, are as follows: Henry Lucas, 20 quarts; Bob Thompson, 6 quarts; Buck Wheeler, 6 quarts; Ocie Smith, 6 quarts, and myself 12 quarts. I did not know what the whisky cost at that time, and as soon as I received the bill I paid back all overplus, and did not make one penny's profit on a single quart of it. The whisky cost 62 cents per quart, and I gave back Henry Lucas $2.60. It is true I gave him back the money after this case had been made against me, but this case was made against me before I received the whisky.

Does the evidence show that the defendant had on hand, for the purpose of illegal sale, the whisky that was seized? Does it prove his guilt beyond a reasonable doubt, or does it simply raise a bare suspicion of his guilt, on which the Supreme Court and this court have frequently said guilt can not be legally predicated? The majority of this court is clearly of the opinion that the evidence, considered most unfavorably, with all inferences therefrom, simply raises a bare suspicion of guilt against the defendant. We do not think that the evidence for the city made out a prima facie case of guilt; for from this evidence it affirmatively appeared that the defendant was acting as agent for the purchasers of the liquor, at least as to the 20 quarts which he had undertaken to order for Henry Lucas and the other negroes who had given Henry Lucas the money with which to order and pay for the liquor. It is true that the drum of liquor contained more than 20 quarts; for the evidence showed that it contained 100 pints; but the evidence further showed that the drum was addressed to the defendant.

The mere fact that he had possession of the liquor would not raise any presumption that he intended to violate the law by selling it, or to keep it on hand for the purpose of illegal sale. It is true the amount of liquor was large, but this evidence alone would only raise a suspicion that the defendant did not want it exclusively for his own use, and this suspicion would not necessarily embrace a violation of law. In the case of *Evans* v. *State,* 101 *Ga.* 780 (29 S. E. 40), the Supreme Court says: "If the accused merely bought whisky for another, using the money of the latter in making the purchase, this did not, either as a matter of law or of fact, constitute the accused the agent of both the seller and the buyer. If nothing more appeared, the agency was for the buyer alone." It is true that the Supreme Court and this court have frequently held that where one receives money from another and shortly thereafter delivers whisky to him for the money, if there be nothing either in the evidence or the statement of the accused to show from whom the whisky was obtained, or that some other person was the actual seller, a presumption would arise that the accused himself was the seller. The fact, however, that the accused failed to disclose the name of the person from whom he bought the liquor would not of itself warrant the conclusion that he was himself the seller to the person to whom he delivered the whisky. Here the undisputed evidence shows that the defendant ordered whisky for himself and others. His statement, which was not denied in any manner, showed the names of the persons for whom he ordered the whisky. The majority of this court is unwilling to hold that the evidence in this case is entirely inconsistent with the defendant's innocence. We are aware of the many subterfuges and pretexts adopted by parties to evade the prohibition law of this State, and wherever the evidence shows that the claim of agency for the purchaser is merely a pretext or subterfuge for a violation of the law, the offender should be convicted and punished. But we are unwilling to hold that in a trial for an alleged violation of the whisky law any different rule of law applies than in the trials of all other criminal cases. In all criminal cases the merciful rule is of inflexible application that guilt must be shown beyond a reasonable doubt, and that a bare suspicion of guilt is not sufficient upon which to base a verdict of conviction. We do not think that a jury or a municipal court has authority, under the law, to arbitrarily disregard

the evidence and the defendant's statement, and either on a bare suspicion, or on knowledge or information obtained aliunde, base a finding of guilt. This court is bound by the evidence as set out in the brief. It is not permitted to indulge in any hypothesis not based upon such evidence; and where, as in the present case, the facts are clearly and absolutely consistent with innocence, and are not sufficient, even when considered most strongly against the defendant, to raise more than a bare suspicion of his guilt, we are compelled to conclude that the finding was without any evidence to support it, and was therefore contrary to law. Nothing more appeared under the facts of this case than that the defendant was acting as agent alone for the purchasers of the liquor. It is true that he does not disclose the name of the party from whom he bought the liquor, but the evidence does show that the liquor was shipped to him by railroad, and his statement to the jury shows that he subsequently received a bill from the seller. The evidence with the defendant's statement seems fully to rebut the idea that he was acting in any other capacity than as the agent for the purchasers and for himself. While we are very reluctant in any case to interfere with the finding of the trial court on a question of fact, for that court is always in a better position to find the truth in the facts than a reviewing court, yet we feel constrained to do so where, as in this case, we are thoroughly convinced that, from a juridicial standpoint at least, there was no evidence to authorize a conviction. *Judgment reversed. Powell, J., dissents.*