### 5375. PITTS v. CITY OF ATLANTA.

In this case there was no evidence to authorize the inference that the accused in any way acquiesced or participated in the illegal sales which necessarily constituted the evidentiary foundation of the charge of keeping intoxicants for illegal sale, and no testimony which indicated that he knew that these sales were to be made or had been made. Consequently the conviction of the accused was unwarranted, and the judge of the superior court 'erred in overruling the certiorari. The case in some respects is similar, as to its facts, to that of *Wright* v. *State*, ante, 185 (80 S. E. 544), and is clearly distinguishable from that of *Deal* v. *State*, ante, 121 (80 S. E. 537), in which the manager's knowledge of illegal sales was manifest.

DECIDED MARCH 26, 1914.

Certiorari; from Fulton superior court—Judge Bell. September 17, 1913.

*L. F. McClelland, M. Herzberg,* for plaintiff in error.

*J. L. Mayson, W. D. Ellis Jr.,* contra.

WADE, J. The plaintiff in error was found guilty by the recorder of the City of Atlanta of having violated the city ordinance prohibiting the keeping of intoxicating liquors for unlawful sale. His petition for certiorari was overruled, and he excepted.

The answer of the recorder shows that there was evidence of an unlawful sale of intoxicating liquor, made by some person or persons, in or near the Beavers Club, a fraternal organization having a lodge-room in Atlanta, Georgia, with a drinking-room for its members, and a reading-room connected therewith. Under the state-

ment of the accused, the organization pays $200 death benefit, $50 for death of a member's wife, and $5 per week to sick members. From his own statement and from other evidence, he appears to have been the manager of the club when the alleged purchase of liquor was made, on or about May 8, 1913. One W. T. Brownlee testified, in behalf of the city, that he was a resident of Lawrenceville, Georgia, engaged in farming and kindred occupations, and that he visited the Beavers Club in the year 1912, accompanying a friend, who procured for him a card of admission, for which the witness paid $1; that he again visited the club a day or so before the trial of the case, and then procured as much as a pint of whisky, for which he paid 75 cents; that this whisky was handed to him by a "gentleman," who received it from a negro, who passed it through a little window; that he had taken five or six drinks of whisky, as well as some beer, before he visited the Beavers Club, in the afternoon that he purchased liquor at the club, or what he bought for whisky; he would not swear it was whisky. He further testified, that he purchased a quart of whisky at the Beavers Club about the first of February, for which he paid $1.50, but was unable to say from whom he purchased it, and that he did not return to the club until the Thursday before the trial of this case, when he purchased whisky from "a tall, slim man." He did not identify the defendant, H. R. Pitts, as the man from whom he purchased it, or testify that Pitts was present either time when he bought whisky, nor did he state that he knew or had ever known the defendant. He merely said that he purchased the whisky at a place which was not far from the club-room of the Beavers Club; that he was not inside the club-room when he made the purchase in May, but that the office where he made the purchase was the same place where he had previously gone to get admission cards to the club. The whisky found on the witness while he was in a drunken condition was corn whisky, whereas he testified that he had purchased rye whisky at the club. This, however, is immaterial, in view of the witness's self-established and general reputation for the consumption of liquor.

It is evident, from the testimony, that an illegal sale of intoxicating liquor was made in the vicinity or within the confines of the Beavers Club; but while all who participate in a misdemeanor, either as principal or accessory, are equally guilty, it

must appear that the party accused, either directly or indirectly, participated in the criminal act, or aided or abetted the crime in some way, before he can be convicted therefor. As was held in the *Wright* case, ante, 185 (80 S. E. 544), "mere passive acquiescence in the commission of a misdemeanor, without protest, does not amount to a crime." In this case it does not even appear that the alleged sale of liquor was made by permission or in conformity with the rules and regulations of the club, or by the actual or implied consent of any of its officers or members; nor (what is more important) does it appear that either of the sales testified to by the sole witness for the prosecution was made in the presence, or by consent, or with the knowledge, of the defendant, or that he ratified or approved the sale in any way; and, so far as the record discloses, the sales were made by parties unconnected with the club. The sole evidence indicating any unlawful storage was that relating to the two alleged sales.

It is not enough to suspect the guilt of the defendant, but, as was said by Hill, C. J., in the case of *Cain* v. *Cordele*, 8 *Ga. App.* 435 (69 S. E. 580), "In all criminal cases the merciful rule is of inflexible application that guilt must be shown beyond a reasonable doubt, and that a bare suspicion of guilt is not sufficient upon which to base a verdict of conviction." As to the sales testified about as having occurred at the Beavers Club, there is absolutely nothing to excite even a suspicion of guilt against the defendant, except the fact that he was admittedly the manager of the club and presumably in charge or control of the premises; but this suspicion is not enough to exclude the probability of illegal conduct on the part of some member of the club or of other parties within the confines of the club, without his participation, knowledge, or consent; and therefore the judgment overruling the certiorari should be reversed. *Judgment reversed. Roan, J., absent.*