28538. WEEKS, *alias* WALLACE, *v.* THE STATE.

DECIDED NOVEMBER 1, 1940. REHEARING DENIED NOVEMBER 20, 1940.

*F. Lee Evans, Wilbur B. Nall, Rupert L. Murphy,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. E. Andrews,* contra.

GARDNER, J. Carl Weeks was indicted with John W. Murphy, alias J. M. Murphy, for possessing burglary tools, in violation of the Code, § 26-2701, in that the defendants "did unlawfully have in their possession one pair bolt clippers, one 9-pound double-pien hammer, one jimmy bar, one bottle containing approximately

one ounce nitroglycerine, one bar octagon soap, one piece bar octagon soap, one drift-pin, 10 feet dynamite fuse, four dynamite caps, one 2-cell flashlight, two pair cotton gloves, one alcohol burner . . designed and commonly used for the commission of burglary and larceny." It further charged Carl Weeks with (a) a previous conviction (plea of guilty) of an automobile, being sentenced November 13, 1934; (b) a previous conviction for larceny of an automobile (plea of guilty), being sentenced November 13, 1934; (c) a former conviction of possessing burglary tools, with sentence as of May 19, 1936; (d) a former conviction (plea of guilty) of burglary, with sentence on July 22, 1936; and (e) with former conviction of larceny of an automobile (plea of guilty), with sentence on March 9, 1937. In the instant case the jury found the defendant guilty. He was given a sentence of not less or more than, ten years, the maximum penalty.

The evidence for the State showed, in substance, that the Continental Gin Company, located in Fulton County, was equipped with a burglary-alarm system; that it was enclosed by a high wire fence with barbed wire at the top, slanting inward; that on December 19, about 12 o'clock, the alarming device of the system sounded alarm; that two peace officers who received the call and the watchman of the system responded to the alarm and found that the device had been tripped by some object passing the raise of the device; that the building was searched, and no person was found there, and no indication of a burglary. The officers left the building, and within 150 or 200 feet from the plant the defendant and his codefendant were seen walking fast down the railroad-track leading from the plant. One of them, Murphy, carried a suitcase, and was looking back. The officers drove alongside of them, and Murphy remarked that they were two hoboes who had just arrived on a train. One of the officers got out of the car, stepped in front of the defendant, and arrested Murphy, whom they had recognized. The other officer, after parking the car, was in the act of arresting Weeks, who then ran over and back toward and close to the watchman of the company, who was still sitting in his car and who jumped out and arrested Weeks. When the officers first saw Weeks, as so they testified, he had in his pocket a bronze flashlight which they could see, and a pin something like twelve to fourteen inches long and what is known as a drift pin used by safe-blowers for

chiseling out and driving into the combination and breaking the concrete away from the tumblers, and which was made of steel. A pair of gloves was taken from each of the defendants' pockets, which, when used in burglaries, are used to prevent finger-prints of the burglars from being left as evidence. The watchman saw the flashlight dropped. The gloves were taken off the defendant when he was arrested. The eye-dropper was found in Murphy's pocket, as well as two pieces of soap. The flashlight and gloves were not unusual, but there was testimony to the effect that it was customary to use gloves to conceal finger-prints. The defendant gave an assumed name, "Alverson." They stated that they had just come from Chattanooga, Tennessee. All the other articles alleged in the indictment, except the nitroglycerine which was found on the person of the companion, Murphy, were taken from the suitcase which was carried by Murphy at the time they were arrested. There was evidence that both defendants were seen together in a store or restaurant not far from the Continental Gin Company, about 7:30 o'clock on the evening of the burglary alarm. Both Weeks and Murphy denied that Weeks had any knowledge of the contents of the suitcase, and contended that they had met just a few minutes previously to the time the officers saw them, and that they were just walking along together. All of this happened on a night that was rainy. Murphy had already been convicted on the same charge. He refused to testify what he intended doing with the tools.

Such was in substance the testimony. The State contended that there was a conspiracy between Murphy and Weeks, unlawfully to possess the articles alleged and proved, for the purpose of committing burglary. The defendant contends, under the general grounds, that as a matter of law the verdict is not supported by the evidence; and that the court erred as set out in six special grounds.

1. As to the general grounds, the evidence was sufficient to authorize the conviction of possessing burglary tools, under the Code, § 26-2701, and to authorize his conviction of acting with a common intent and purpose with Murphy to possess the tools in the suitcase, as charged in the indictment.

2. The first special assignment of error is that the court erred in allowing a witness, over objection, to explain the method of using burglary tools. There is no merit in this contention. The

second special assignment of error is based on the admission in evidence of the articles found in the suitcase, on the ground that none of the articles were found in actual possession of Weeks. There is no merit in this contention. The third special ground assigns error because the court refused to permit the mother of Weeks to answer the following question: "Have you at any time warned Carl [Weeks] about various things?" On objection by the State the court refused to let her answer. The defendant's counsel stated that it was expected to show "that he has on numerous occasions been warned by his mother and by his father and by myself on being seen, or caught, in the company of any person who has a record, or any person of bad character; it is for the purpose of explaining his conduct in running, flight; and I think we have a right to go into any explanation where they introduce flight into the proposition." It is contended that it was error to exclude the evidence for the purposes offered. Under the evidence, we do not think that the materiality of this error is sufficient to warrant a new trial.

The fourth assignment of error is to the effect that the court should not have given in charge the law of conspiracy. The court charged the principle correctly, and we hold that it was authorized by the evidence. The fifth assignment of error is that the court charged the jury as to the law regarding the prima facie principle as to the truthfulness of the witnesses and the weight of the evidence, and that it was a rebuttable principle and may be overcome by evidence to the contrary, and immediately thereafter charged that such principles did not apply to the truth or falsity of the defendant's statement; and it is contended that in thus charging the abstract principles the court in effect intimated and expressed an opinion that the testimony of the witnesses, given under oath, established the fact that the defendant was guilty. We find nothing of merit in this assignment of error.

The sixth ground alleges error because the court charged the jury on the authority of the Prison Commission of Georgia to make rules and regulations whereby the defendant might be released or further confined after serving the minimum of his felony sentence. It is contended that this was prejudicial to the defendant, and calculated to lead the jury to the opinion to convict him because he had been paroled under the rules of the Prison Commission.

We think this assignment is without merit. The judge should always give this instruction to the jury, in order that they may know the effect of the sentence.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*