## 33302. EASTERWOOD *v*. THE STATE.

DECIDED MARCH 2, 1951.

*Don B. Howe, Harold L. Murphy*, for plaintiff in error.

*Brantley Edwards, Solicitor, Constance M. Ragsdale, Solicitor pro tem.*, contra.

GARDNER, J.  The evidence of the State shows that the officers had a search warrant and that they broke into the locked house of the defendant.

There was evidence that approximately 500 empty beer cans were found behind the defendant's house, about 20 or 30 yards from there, and that there were two vacant houses directly behind his house.  There was no evidence as to whether the beer cans appeared to be recently placed there, or to show whether they might have represented an accumulation of years.  Also, the testimony as to a number of beer cans beside the public road for a quarter of a mile beyond the defendant's house did not indicate in any way whether they were connected with the house, how old they were, or how long they had been lying beside the road.  The empty cans alone, therefore, were those back of the house or those lying along a public road and in the ditches, with no evidence as to how long they had been lying there or that the defendant was responsible for them, and constitute no evidence of guilt so far as the charge of selling without a license is concerned.

There was no serious attempt to identify any purchasers of the beer the defendant was accused of selling.  The witness testified, as to certain persons, "I don't know that the people on the outside had been in the house."  He further stated: "In passing by this house I have observed cars or traffic in and out of the yard there.  On one particular occasion, a Saturday night or two before this was raided, we noticed there were four

different cars in the yard. They were all there at the same time. I did not notice the people in the cars. On other occasions I saw cars parked there. That was before the beer was caught." In this day and time it is not unusual to see four cars parked at a house at one time, and consequently the evidence as to traffic seems to fall short, both as to the number of persons or cars involved, and the number of times they were noticed, as proof that any unusual number of people were in the habit of going to the premises in question.

This leaves, as the only evidence, 103 cans of iced beer found in the home refrigerator, and three cases found in a closet. The defendant explained these by saying that his wife went to Rome and bought the beer in order to have it for a birthday party she was giving the following Sunday.

In *Buchanan* v. *State*, 77 *Ga. App.* 435 (49 S. E. 2d, 157), relied on by the State, the evidence was: that 72 cases of beer were found on the defendant's back porch; that over a period of two years large quantities of beer had been kept there and large quantities were found iced on the back porch, with several cars parked around the house and the occupants thereof going into the house and coming out with paper sacks; that the defendant had several times loaded his car with beer and driven off, and had several times loaded his brother's automobile with beer and driven off. This evidence, although circumstantial, was not only stronger but possessed a continuity in time which indicated the general design of action and negatived with possible explanation that the beer had been bought for some particular occasion.

In *Howard* v. *State*, 77 *Ga. App.* 712 (49 S. E. 2d, 684), another case relied upon by the State, the evidence also affirmatively showed the habit of keeping excessive quantities of beer, as well as iced tubs of beer, on the premises over a two-year period. This is very different from finding 7 cases of beer, mostly in a home refrigerator, on one occasion only.

This case is much closer on its facts to *Fain* v. *City of Atlanta*, 8 *Ga. App.* 96 (68 S. E. 619), where it was held that "mere possession of 3 gallons of corn whisky, in half-pint flasks kept in the owner's dwelling, without any evidence of a sale or of an attempted sale on the part of the owner, is not such a circumstance

as will authorize the conclusion, based upon moral and legal certainty that such liquor was kept for the purpose of sale." Mere possession of liquor in itself is not ordinarily sufficient to convict of the offense of offering liquor for sale or selling the same. See *Cain* v. *Mayor & Council of Cordele,* 8 *Ga. App.* 433, (69 S. E. 578), and *Smith* v. *City of Atlanta,* 12 *Ga. App.* 816 (78 S. E. 472).

The Code (Ann. Supp.), § 58-726 (Ga. L., 1937, pp. 148, 152), makes it a misdemeanor to do any one of three things: to sell beer, to offer it for sale, or to possess it for the purpose of sale, without a license. There is no evidence in the instant case that the defendant sold the beer, or that he offered it for sale. Possession is proved. But the possession must be *for the purpose of sale,* and mere evidence of possession can not be relied upon to show that the purpose of the possession was to sell the same, unless it is under circumstances which negative every other reasonable hypothesis. We do not think it an unreasonable hypothesis that, as the defendant stated, he had bought the seven cases of beer for the purpose of having a birthday party the following weekend. The evidence is insufficient to support the verdict.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the full court consider any case in which one of the Judges of a division may dissent, and there being a dissent, this case was considered and decided by the court as a whole, and after consideration of the motion the judgment is concurred in by a majority of the six Judges of this court, and the judgment of the trial court is reversed.

*Judgment reversed. Sutton, C. J., Felton, Townsend, and Worrill, JJ., concur. MacIntyre, P. J., dissents.*

MacIntyre, P. J., dissenting. The charging part of the accusation is that the defendant "did unlawfully offer for sale and possess for purpose of sale malt beverages known as beer, etc." The State proved that the defendant had no license to deal in beer. The sheriff testified that he went to the house of the defendant with a search warrant, looking for whisky, and that when he, the sheriff, arrived at the outer screened door of the screened porch of the defendant's house, the defendant came to

the wooden door that led from the screened porch into the house, opened it, stuck his head out of the door and asked who was there. The sheriff thereupon identified himself as sheriff. The defendant slammed and locked the wooden door and "hollered to his wife." The sheriff forced his way through the screen door and reached the wooden door. The defendant delayed opening the wooden door as requested by the sheriff, but did open it a few minutes later as the sheriff was about to force it open. The sheriff entered the house and went to the bathroom to search it, but the defendant's wife had already entered and locked the door of the bathroom and delayed the sheriff's entry into the bathroom. When she opened the bathroom door the sheriff entered, and he testified that he "found about a three-gallon pickle jar with fumes of whisky and a big-mouth pickle jar and the smell of whisky in the bathroom and in the jar." He found in the refrigerator on the back porch of the defendant's house 103 cans of beer; and in the closet in the dining room he found an additional 72 cans of beer, making a total of 175 cans of beer found in the defendant's house. He found about 500 beer cans at the back of the defendant's house. There were two houses "right behind" the house in which the defendant lived, but they were empty at the time in question. The defendant in his statement to the jury on the trial said that those two houses belonged to him and that there were other houses close to his house. The sheriff also testified that there were quite a few cans in the ditches along the road that led by the defendant's house; that the beer cans began at the defendant's house and followed the road "up and down from his house," and that there were beer cans in the ditches for a quarter of a mile; that 100 bottles were found inside the house, consisting of beer, whisky, and medicine bottles. The sheriff also testified: "In passing this [the defendant's] house, I have observed cars and traffic in and about the yard there." Whence came so many empty beer cans in the ditches along the road in front of the defendant's home? I do not think it reasonable to say that people from other vicinities were carrying so many beer cans from other vicinities, drinking the beer, and throwing the empty cans in front of the defendant's house. I think it a reasonable hypothesis that those cans of beer were bought close

by the ditches in which they were found, that the beer was drunk, and the empty cans were thrown in the ditches along the road in question. Why so many empty beer cans at this particular point? True there were some other houses in this vicinity. From which of these houses did the beer cans come? I think that the jury was authorized to say that they came from the house which had all of the indicia of keeping beer for sale, as shown by the evidence, and that house was the house of the defendant. There was no evidence or any intimation that any other house kept beer. The defendant said in his statement that he did not drink beer, but that his wife and mother-in-law did, and that they had 175 cans of beer, which had been gotten for his wife to give a party on Sunday; that "my daughter and her husband, from Birmingham, were coming up there and her sister and old man." This seems to leave 175 cans of beer for only six people to drink. The defendant did not deny or explain in his statement to the jury the tell-tale empty bottles and cans in question except to say that "there were no beer cans in front of my house."

In *Brown* v. *Matthews,* 79 *Ga.* 1, 8 (4 S. E. 13), Judge Bleckley, speaking for the court, said: "It not unfrequently happens that the testimony proves more than any one witness knows, or than is known to all the witnesses taken together. This is so perhaps in every instance where the evidence, though sufficient, is only circumstantial. Where the evidence is all direct, the jury can be no wiser than the witnesses, but they have to be wiser in order to find the truth of any fact upon circumstantial evidence alone. . . Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." Even if no one circumstance here was conclusive of the guilt of the defendant yet, when all of the circumstances are taken together, I think the jury was authorized to find that the defendant possessed beer for the purpose of sale without a license. The defendant's counsel contends "that the evidence adduced upon behalf of the State does not exclude the hypothesis that . . [the defendant] was a lavish entertainer," but even so the reasonable hypothesis would be that the guests would drink the beer at the home of the entertainer and leave the empty cans

there, and the unreasonable hypothesis would be for them to wait until they had reached the ditches of the public road in question to dispose of the empty beer cans; and if the defendant sold beer, it would be a reasonable hypothesis for at least some of his customers to dispose of the empty beer cans by throwing them in the ditches, as testified by the sheriff. It seems to me that there was too much beer, too many empty beer containers, and too many other circumstances pointing to the defendant's house as the one in that vicinity where beer was kept for sale, and that the jury was authorized so to find.