## 41952. CROKER v. THE STATE.

ARGUED APRIL 5, 1966—DECIDED JULY 7, 1966.

*Henritze, Baker & Bailey*, for appellant.

HALL, Judge. ■ One of the enumerations of error is that the trial court erred in overruling the defendant's objection to the admission of certain evidence found in the trunk of the defendant's automobile on the ground that the evidence was the product of an unreasonable, illegal search and seizure prohibited by the Fourth and Fourteenth Amendments to the United States Constitution.

"Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. . . But even in the case of motorcars, the test still is, was the search unreasonable." Preston v. U. S., 376 U. S. 364, 366-367 (84 SC 881, 11 LE2d 777). In applying this test, reasonableness is not determined by the hindsight of appellate court judges after weeks of academic deliberation; it is determined

by the foresight of the policeman on the scene who must act in the public interest in a very short space of time. The reasonableness of his action must be judged "in relation to the circumstances then existing and is in the first instance a question for the trial judge to determine." *Roach v. State*, 221 Ga. 783 (3) (147 SE2d 299); Mapp v. Ohio, 367 U. S. 643 (footnote 3) (81 SC 1684, 6 LE2d 1081); Ker v. California, 374 U. S. 23 (83 SC 1623, 10 LE2d 726).

Where an abandoned car is a necessary part of a criminal investigation, its search is lawful even though no search warrant was obtained. Sandel v. State, (Texas Crim. App.) 253 S. W. 2d 283. "Abandonment, of course, is largely a question of intent. United States v. Wheeler, 161 FSupp 193, 198 (W. D. Ark., 1958). Intent, in turn, is a question of fact." U. S. v. Minker, 312 F2d 632. We must also remember that, "In dealing with probable cause, however, as the very name implies, we deal with *probabilities*. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. U. S., 338 U. S. 160, 175 (69 SC 1302, 93 LE 1879). (Emphasis supplied). "To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act." Husty v. U. S., 282 U. S. 694, 700-701 (51 SC 240, 75 LE 629, 74 ALR 1407).

What were the circumstances existing at the time the automobile was searched by the police officers? The officers on patrol had received a call around 11 p.m. from the sergeant instructing them to investigate and look out for a specified type of automobile with a trailer attached to the back of it, that was riding around at a certain location. About midnight they found, in front of a suburban house, an automobile of the description given by the sergeant, with a trailer attached, which had a Fulton County license tag indicating that its owner lived some seventy miles from where it was parked. The officers testified that they "checked it out" to see if the automobile was abandoned, and "People hadn't seen a car like that out in that section." They did not find a name or anything in the car to identify the owner. One of the officers had with him an automo-

bile key which had been taken from the defendant (who had earlier in the evening been placed in custody for investigation) and which the defendant had said was the key to his automobile in Atlanta. This key fit the ignition and the trunk. They did not assume that the car belonged to the defendant because he had previously informed them his car was in another city. The officers unlocked and opened the trunk and found a suitcase containing burglary tools. They drove the automobile to headquarters, and talked with the defendant, who identified the car and suitcase as his, and searched the car some more and found a pistol, dynamite caps and other items. They then arrested Croker.

What was reasonable in the minds of these officers at the moment they first searched the automobile? Should they conduct an immediate search or go and try to obtain a search warrant during the early hours after midnight? The answer is well stated by the Supreme Court of the United States in Husty v. U. S., 282 U. S. 694, supra, p. 701: "In such circumstances we do not think the officers should be required to *speculate* upon the chances of successfully carrying out the search, after the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant." (Emphasis supplied).

Both the Supreme Court of Georgia and the Supreme Court of the United States have held that "in the first instance" the reasonableness of a search is "a question for the trial judge to determine." In the present case the trial court admitted into evidence those articles that were seized by the officers at the time when, according to their testimony, it was reasonable for them to believe that the automobile was abandoned. The court excluded from evidence those articles that were seized by the officers after they returned to police headquarters with the automobile and learned that it was owned by the defendant. It does not appear as a matter of law that the trial court was in error in admitting the evidence objected to.

2. Proof that the defendant possessed burglary tools "with the intent to use or employ or allow the same to be used in the commission of a crime, or knowing that the same are intended to

be so used," is essential to support a conviction. *Code* § 26-2701. The only evidence in this case reflecting on the defendant's criminal intent is that the defendant was in possession of the tools, that he was observed by police officers near trailer courts about three miles out in the city and stated that a friend had let him out of a car and he was going fishing, and that police officers found his car, apparently abandoned, in the same area. This evidence was not sufficient to support the conviction. Accord, *Easterwood v. State,* 83 Ga. App. 400, 402 (63 SE2d 689). There was no evidence that a burglary had been committed or attempted near the same time and place, or that the defendant had been involved in previous burglaries, or evidence of other facts or circumstances present in cases where the evidence was held sufficient to support a finding of criminal intent. See *Farlow v. State,* 59 Ga. App. 881 (2 SE2d 500) ; *Weeks v. State,* 63 Ga. App. 773 (11 SE2d 670) ; *Franks v. State,* 74 Ga. App. 400 (39 SE2d 761) ; *Montgomery v. State,* 80 Ga. App. 102 (55 SE2d 666) ; *Shelly v. State,* 107 Ga. App. 736 (131 SE2d 135).

*Judgment reversed for the reason stated in Division 2. Bell, P. J., Frankum, Jordan and Eberhardt, JJ., concur. Felton, C. J., Nichols, P. J., Pannell and Deen, JJ., dissent from the ruling in Division 1.*

DEEN, Judge, dissenting in part. While I concur in the second division of the opinion and in the judgment of reversal, I do not agree that the search of the defendant's automobile without a warrant was reasonable within the meaning of the constitutional safegaurd. I consider the question important because the decision in this case is tantamount to a holding that any police officer in this State may break and enter any automobile where the driver or an occupant is temporarily absent, justifying after the event on the ground that the car has been "abandoned."

Sandel v. State, 253 SW2d 283, cited in the majority opinion, is not only inapplicable to this case, but affords good reason for a holding to the contrary. The Sandel case holds that an *abandoned* car may be searched without a warrant *as a necessary part of a criminal investigation.* Neither fact appears here unless as an inference based on hearsay. Kinney, a Rome police-

man, testified only: "We were looking for an automobile with a trailer attached to the back of it" without identifying the car in any way or stating why they were looking for it, and that they were out in a vicinity "where the trailer courts are." On cross examination he stated: "We did receive a call. The sergeant gave it to us from headquarters; somebody called him. He gave us the call that there was a certain type of automobile riding around out on Shorter Avenue around the West Rome section out there where the West Rome School was, and we proceeded out in that direction." This activity was interrupted when the witness found other police officers talking with the defendant, took the latter to the police station, illegally booked him for "investigation" (*Raif v. State,* 109 Ga. App. 354, 358 (136 SE2d 169)), and removed his personal belongings from his pockets. "The regular procedure is to put all of the belongings in this safe there in an envelope, so we put all of his belongings there" except the defendant's keys, which the witness kept in his own possession, went back to routine patrolling, and within a few minutes of midnight found the Ford Fairlane with trailer attached legally parked on the street in a residential section. Officers, finding that the defendant's keys opened the car doors, removed the items admitted in evidence from the trunk. "We see something we don't think belongs there, we always check it. . . Well, the car looked like it had been abandoned and sitting there. People hadn't seen a car like that out in that section and we proceeded to check it out to see if it had been abandoned." Obviously, from the witness' own statement he did not know whether or not the car was abandoned and had no reason to believe it was except that it was "just sitting there" and "people hadn't seen a car like that out in that section." What people he queried at midnight when he came upon the car does not appear; the evidence fails to reveal that any persons were present other than the police officers themselves. However, the fact that the automobile had a Fulton County license was of itself explanation of why it was not recognized by the hypothetical people, and surely was not, of itself, a sufficient fact to suggest either abandonment or involvement in a criminal enterprise. Furthermore, the first thing which the police officer who

had illegally arrested the defendant did with the keys illegally in his possession instead of in the office safe, was to try them on the car and open it, thereby establishing that the car with the Fulton County tag was in the possession of the defendant, a known Fulton County resident, who was at the time safely under lock and key. Thus, there was no time when the officer under his own testimony could have considered the car abandoned, for the first thing he did to "check it out" to see whether or not it was abandoned was to try the defendant's keys and discover that they fit. Incarceration of the owner is a very good explanation for absence from an automobile. The car was towed off to storage and released to the defendant owner the next day.

Searches of automobiles without warrants are reasonable where a like search of real property would not be, only where the circumstances are such that there is real danger to apprehend the automobile will otherwise be removed, but "a general exploratory search is not to be tolerated." McCurdy v. State (Ala.), 176 S2d 53. While information obtained from official sources may be relied upon in making the determination (People v. Estrada, 44 Cal. Rptr. 165), the only information revealed here is that the officer was told by the sergeant that "somebody" had called him about a certain car. Not one fact appears in this record linking such car with any criminal investigation. Both the arrest of the defendant and the search of the automobile appear only as a general dragnet operation with no statement at all as to what was expected to be found or what cause there might have been for expecting to find anything of a criminal nature. Even the items removed, as the majority opinion holds, fail to show the commission of a crime, and nothing at all prior to the search suggests any illegal activity.

While it is true that the question of whether there has been an abandonment is largely one of intent, the claim that the vehicle searched was abandoned must at least be borne out by the facts sufficient to create more than a possibility that it has been abondoned where all the circumstances are equally consonant with the probability that it has not. In People v. James, 259 N. Y. S. 2d 241, the exact question was presented. There the

police, answering the call of an unidentified woman that an automobile had been illegally parked in a certain location for two days, undertook to search it without a warrant. The court, holding the search illegal, said: "If the mere presence of an automobile at a specified location for two days constituted an abandonment, common knowledge reveals that many hundreds, if not thousands, of automobiles in the metropolitan area could be deemed abandoned. A finding of abandonment here would rest on a bridge of sand." The facts in the James case were much stronger than those here, where the car and trailer were legally parked, and there is no indication that it had been there for any length of time whatever prior to the search.

Statutes regulating the issuance of search warrants must be liberally construed in favor of the citizen so as to safeguard his right to privacy. Sgro v. U. S., 287 U. S. 206 (53 SC 138, 77 LE 260, 85 ALR 108); Grau v. U. S., 287 U. S. 124 (53 SC 38, 77 LE 212); U. S. v. Lefkowitz, 285 U. S. 452 (52 SC 420, 76 LE 877, 82 ALR 775); Go-Bart Importing Co. v. U. S., 282 U. S. 344 (51 SC 153, 75 LE 374). The probable cause for searching an automobile must exist to the same extent that it must exist under the constitutional mandate before any other property may be searched; the lessening of the requirement for a search warrant only arises *thereafter*, upon a showing that to obtain the warrant after discovering that probable cause to suspect that a crime has been committed exists would be to run the risk of the vehicle being driven away. Carroll v. U. S., 267 U. S. 132 (45 SC 280, 69 LE 543, 39 ALR 790); Preston v. U. S., 376 U. S. 364 (84 SC 881, 11 LE2d 777). Had the sergeant who instructed the witness to look for the vehicle himself had cause to believe it was involved in criminal activity, he could have had a search warrant issued and in the possession of the police officer earlier in the evening and before the defendant was even picked up. Nothing which happened thereafter gave the officers any cause to believe the vehicle was stolen, contraband, or involved in the commission of a crime, and the basis of the sergeant's original instructions does not appear. I am therefore of the opinion that the evidence consisting of items

removed from the trunk of the defendant's car was illegally obtained and inadmissible.

I am authorized to state that Felton, C. J., Nichols, P. J., and Pannell, J., concur in this dissent.