CLYDE EDWARD LAWS and THOMAS FRANKLIN
DORMAN a/k/a THOMAS FRANK DORMAN
*v.* STATE OF MARYLAND

[No. 193, September Term, 1968.]

*Decided March 10, 1969.*

*Joseph E. O'Brien, Jr.,* for appellants.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Andrew Sonner, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Clyde E. Laws and Thomas F. Dorman, the appellants, were convicted of kidnapping in the Circuit Court for Talbot County,

Judges J. DeWeese Carter and Harry E. Clark presiding with a jury. The case had been removed from Montgomery County at the request of the appellants who were each sentenced to a term of twenty years. Questions on appeal will be set out hereinafter.

The evidence can be summarized as follows:

Clement Lee Lanham, at the time in charge of the Kroeger Store located on Georgia Avenue, Montgomery County, Maryland, testified that both Laws and Dorman participated in an armed robbery in which over $1500 was taken. Laws displayed a snub nosed revolver during the incident which lasted between five and ten minutes. When the men left the premises the police were immediately notified, and a description of the felons was given.

Officer Ray Brown, of the Montgomery County Police Department testified that at 8:15 P.M. on February 8, 1967, he and his partner, Officer Theodore Chick, overheard a police radio broadcast concerning the robbery at the Kroeger Store including a lookout for two described males. Officer Brown related that while patrolling in a police car he observed two males of similar description to the wanted felons driving south on Georgia Avenue, at a point approximately one or one and one-half miles from the robbery scene, in a 1964 green Pontiac automobile with out-of-state license tags. The officers signaled the vehicle to a stop at approximately 8:20 P.M. The driver, identified as Laws, emerged from his vehicle as Officer Brown emerged from the police car, and when the two men were approximately an arm's length from each other, Laws pulled a revolver and shot Officer Brown in the side. The officer was able to draw his own pistol and return the fire, hitting Laws before Laws was able to re-enter his automobile and flee the scene. He also hit the rear window of the automobile with two shots. Officer Brown was unable to identify the other person in the vehicle.

Officer Chick testified that as he and Officer Brown were about to stop the vehicle he reported their activities over police radio and gave a full and detailed description of the vehicle. After the shooting, he again used the radio to report the event and

related that the rear window of the wanted vehicle had been hit by bullets.

Garner Pozgay, employed at a pharmacy located at Knowles and Connecticut Avenues, testified that he left the pharmacy at about 8:30 P.M., walked to his automobile, and as he was inserting the key into the door lock of his car, Dorman approached claiming to have a gun in his pocket and ordered him into the car. As they entered the vehicle Laws entered from the passenger side. As Dorman drove the vehicle from the parking lot he asked instructions to the beltway—which Pozgay gave. As they were riding, an alarm was broadcast over the car radio concerning a robbery and also a shooting of a police officer. Laws referred to the officer as a "son of a bitch" and said he had "hoped he had gotten the son of a bitch good." Pozgay turned off the car radio fearing an announcement about himself and his car. After a period of time the car left the beltway because, as Laws stated, there was a danger of being apprehended. Laws also stated that he had been shot and that he desired to make a telephone call. The car was stopped, and as Laws got out he passed a snub nosed pistol to Dorman telling Dorman to shoot Pozgay if he attempted to make a break. After Laws returned to the car he told Pozgay that the men were going to take his car and that it was better for Pozgay to give up his car than give up his life. Ultimately, Pozgay was released from the car on McArthur Boulevard. Subsequently he hailed a car and was taken to a police station where he reported the events. Pozgay was in the vehicle with Laws and Dorman for a period of approximately 35 minutes and had been transported approximately 12½ miles—all within the confines of Montgomery County. Pozgay also related that he was scared and that he was led to believe that if he did not cooperate to the fullest with the men that he was going to be killed. He stated that he had full opportunity to observe both of the men, and that he was positive in his identification of them.

The next prosecution witness, Sergeant James Morrison, of the Montgomery County Police Department, related that he had received a police radio lookout for a 1964 green Pontiac automobile, bearing Indiana license 53 C 1604, with bullet holes in the rear window, which had been involved in a holdup and also a

shooting of a police officer. He also had received information of the offense at Knowles and Connecticut Avenues. He related that at approximately 9:45 P.M. on February 8, 1967, while cruising in the Kensington, Maryland area he observed the automobile corresponding to the broadcast description, except that the vehicle had no license plates. The vehicle was discovered parked on a dead-end public street, St. Paul Street, adjacent to a building, approximately three blocks from Knowles and Connecticut Avenues. Sergeant Morrison immediately notified his supervisors, and did not disturb the vehicle in any manner.

Detective Richard Kitterman related that the vehicle was searched at a nearby police station and that, among other things, two hats, a trench coat and laundry slips were found therein. The laundry slips bore the name Dorman. The serial number plate usually located on the door frame of the vehicle had previously been removed; however, an F.B.I. agent was able to locate another serial number secretly stamped elsewhere on the vehicle, thus enabling the police to trace the car's ownership.

Mr. Theodore Lalos, stated that he had sold the vehicle to Laws on January 14, 1967. The witness next observed the car at the police station on February 9, 1967, at which time he was able to identify the vehicle. He especially noted that he was able to identify it by the presence of three holes in the rear window ledge, which he had drilled therein to accommodate a baby seat.

The final witness for the State, Agent Otto Handwerk, established that Laws was arrested in May, 1967 in Raytown, Missouri, on the basis of a federal warrant issued in connection with the kidnapping and other Maryland offenses. A search of Laws' motel room produced the serial number plate which had been removed from the 1964 Pontiac automobile.

No evidence was presented on behalf of the appellants.

Appellants contend that since they were tried under two indictments, one for robbery and one for kidnapping which had been consolidated for trial that under Maryland Rule 746 a (2) they were each entitled to forty challenges. We are not impressed with their argument but since neither of them used all of the twenty challenges they were each allowed by the court the matter is not before us for review because they were not, in any

way, harmed by the ruling of the court. See *Johns v. State,* 55 Md. 350, 364, *Dubs v. State,* 2 Md. App. 524, 532, 235 A. 2d 764.

Laws and Dorman both contend that the trial court committed error when it refused to grant them separate trials. The matter of severance in Maryland is entirely in the discretion of the trial judge in the absence of an abuse thereof. *Davis and Peterson v. State,* 1 Md. App. 581, 232 A. 2d 535 and the authorities therein cited. The major argument to support the motion was that Dorman did not want to be tried with Laws because he knew that evidence concerning the shooting of the police officer would be introduced at Laws' trial. Since we will hold hereinafter that the evidence would have been admissible in any event it is apparent that there was no abuse of the trial judges' discretion in refusing to sever the cases. The appellants rely on *Day v. State,* 196 Md. 384, 76 A. 2d 729 where the Court of Appeals found abuse of discretion where the co-defendants had defenses hostile to each other in that each tended to blame the other for the killing during a felony. Since neither Laws nor Dorman presented any evidence at the conclusion of the State's case it is apparent that *Day v. State, supra* has no application here.

Appellants also contend that evidence of the prior crimes of robbery and of assaulting of the police officer should not have been admitted into evidence. They quote the general rule that evidence of an unrelated crime is not admissible at a criminal trial from *Bryant v. State,* 207 Md. 565, 586, 115 A. 2d 502, but significantly omit the relevant part of the quotation which is more fully set out as follows:

> "Appellant also objected to the introduction in evidence of a certified copy of the docket entries of the court records of Magistrate Crane showing that on March 12, 1954, he had been convicted of two assaults on Joan Ruzza on March 7 and 8.
>
> "It is a general rule that evidence is inadmissible in a criminal trial to show that the accused had committed another crime unrelated to the crime charged. The reason for the rule is that such evidence would tend to divert the minds of the jurors from the real ques-

tion in issue and arouse their prejudices. However, the general rule does not deprive the State of its right to make out its case. If evidence of another crime tends directly to prove the defendant guilty of the crime for which he is being tried, or if the other crime charged is so linked together in point of time or circumstances that one cannot be fully shown without proving the other, regardless of whether the crime incidentally shown is of the same or a different character from the one on trial, the general rule of exclusion does not apply. Where intent is material, the conduct of the accused is relevant to show that intent. Hence, evidence of collateral offenses is admissible, on the trial of the main charge, to prove the intent. To be admissible as relevant, such offenses need not be exactly concurrent. If they are committed within such time, or show such relation to the main charge, as to make connection obvious, such offenses are admissible to show intent. *Wentz v. State,* 159 Md. 161, 150 A. 278; *Callahan v. State,* 174 Md. 47, 197 A. 589; *Wood v. State,* 191 Md. 658, 664, 62 A. 2d 576.

"In the case at bar the evidence of the convictions was admissible because it showed appellant's behavior toward the girl whom he killed only a month later, thus tending to show motive and intent."

Since proof of intent is necessary for a conviction for kidnapping, Md. Code, Article 27, § 337, *Midgett v. State,* 216 Md. 26, 139 A. 2d 209 it is obvious that *Bryant v. State, supra* is adequate authority for the admission of the questioned testimony at the trial in the case at bar. We have reviewed the law as to the admission of evidence of other crimes in several cases. See *Thomas v. State,* 3 Md. App. 708, 240 A. 2d 646, *Hicks v. State,* 3 Md. App. 225, 238 A. 2d 577 and *Gorski v. State,* 1 Md. App. 200, 228 A. 2d 835. These cases indicate that the testimony would also be admissible on other theories as well as the one we are adopting.

Both appellants contend on appeal that the search of the 1964 green Pontiac automobile was unreasonable and that evidence

gleaned therefrom should not have been admitted into evidence, although it appears that only Laws made timely objection to the evidence below.

In the leading case of *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 the Supreme Court of the United States laid down the rule that where police officers had probable cause to believe that a motor vehicle contained contraband its search was reasonable. Since *Warden v. Hayden,* 387 U. S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 has abolished the "mere evidence rule" it would seem that where police officers have probable cause to believe that a motor vehicle contains evidence of crime its search would also be reasonable. We need not make that decision here, however, because of the familiar rule that there can be no complaint when police officers seize abandoned property. *Jones v. State,* 5 Md. App. 180, 245 A. 2d 897. At the time the car was seized here the officers had every reason to believe that it was the car used by the persons who shot Officer Brown. The only missing link was the absence of license plates. This fact merely fortified their belief that the car had been abandoned. Courts all around the country, with very little, if any, dissent have applied this doctrine to automobiles in appropriate cases. See *People v. Smith,* 48 Cal. Rptr. 382, 409 P. 2d 222 *cert. denied,* 388 U. S. 913, 87 S. Ct. 2119, 18 L.Ed.2d 1353, *People v. Miller,* 245 Cal.App.2d 112, 53 Cal. Rptr. 820, *Croker v. State,* 114 Ga. App. 43, 150 S.E.2d 294, *People v. Harper,* 26 Ill. 2d 85, 185 N.E.2d 865, *People v. Moore,* 35 Ill. 2d 399, 220 N.E.2d 443, *State v. Barr,* 126 Vt. 112, 223 A. 2d 462, *Hawley v. Commonwealth,* 206 Va. 479, 144 S.E.2d 314, *Wade v. Warden,* 278 F. Supp. 904 (D. Md.) *Hiet v. United States,* 372 F. 2d 911 (D.C. Cir.).

Finally it is contended that the evidence was not sufficient to support the conviction, which we will answer by simply referring to the testimony of the victim.

*Judgments affirmed.*