Buford Dale **CRONEY** and Bill Wayne Croney, *Plaintiffs in Error,*

v.

The **STATE of Oklahoma, Defend-**ant in Error.

**No. A-16314.**

Court of Criminal Appeals of Oklahoma.

May 5, 1971.

Rehearing Denied June 17, 1971.

D. C. Thomas, Oklahoma City, for plaintiffs in error.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Buford Dale Croney and Bill Wayne Croney, hereinafter referred to as defendants were charged, tried and convicted in the District Court of Logan County of the offense of Burglary in the Second Degree, their punishment was fixed at three and one-half (3½) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial revealed that Ace Etheridge was an employee of the After Hours Club. He testified that on February 24, 1970, he and Leonard Breedin arrived at the club about 12:30 P.M. and noticed a black Ford automobile parked outside the cyclone fence which surrounded the building. The trunk and car door on the automobile were open. A plywood board covering a hole in the building had been removed, and a washtub was sitting beneath the hole. There were trash cans filled with merchandise, a television set, fan, filled cardboard boxes, and other items lined up inside the cyclone fence parallel to the automobile. He heard a noise at the front of the building and he and Breedin ran to the front and saw two men going over the seven foot high cyclone fence. Breedin fired a gun at the men, but they continued running. Etheridge could not identify the men, but did describe their clothing as a white shirt on one and a loose dark shirt on the other. The fleeing men ran into a barbed wire fence which surrounded the building and the cyclone fence, falling, but continued their flight.

After searching for the burglars, Etheridge and Breedin returned to the club, assessed the damage, and contacted the owner, Don Hendrickson.

The State next called Leonard Breedin to the stand. He testified he was the doorman at the After Hours Club and had been with Etheridge when they came upon the burglary. His testimony was substantially the same as witness Etheridge's.

Don Hendrickson next testified for the State. He said that he was the owner of the After Hours Club, which was located in Logan County. That witnesses Etheridge and Breedin notified him of the burglary and he went to the site. Upon arriving he found a 1963 or 1964 black Ford automobile parked outside the cyclone fence. Inside the fence he found several items taken from his club, including an Emerson television set, a bottle of I. W. Harper whiskey, a bottle of vodka, all of which were introduced into evidence.

He further testified that a music box, pool table, and cigarette machine inside the building had been broken into, and that the building had been secure when he had left the night before.

James Riley testified that he was a deputy sheriff of Oklahoma County, and that he investigated the burglary of the After Hours Club after a call from the Oklahoma City Police Department for assistance in a search for two suspects. A description was given him, and at about 7:05 A.M. he observed the two men who fit that description walking in a field. Their clothes were torn and dirty, their shoes were muddy, they were quite scratched up, and the scratches were fresh. He called them to his car and arrested them for burglary of the After Hours Club and searched them. He identified the two men he arrested as the defendants and pointed them out in open court. In his search he found a pair of wire cutters in Buford Croney's pocket. The defendants were taken to the Oklahoma County jail to be held for Logan County authorities.

**1064**

The State next called Odis Cargill, Under-Sheriff of Logan County, Oklahoma to the witness stand. He testified that when he arrived at the burglarized club Etheridge, Breedin and Hendrickson were there. He saw a black 1964 Ford parked outside of the cyclone fence with the trunk and door open. At the rear of the automobile the bottom wires of the fence had been cut and unwoven for about one and one-half feet. On the inside of the fence he saw the same items as were previously testified to by witnesses Etheridge, Breedin and Hendrickson.

He further testified that while standing outside the left-hand side of the black Ford he observed a billfold on the console between the front bucket seats. That he picked up this billfold in order to ascertain ownership of the vehicle. The billfold contained a duplicate Oklahoma State Driver's License and selective service card of defendant Buford Dale Croney. These exhibits were introduced over the defendant's objection.

He stated that the glove compartment of the black Ford was open and in it he found an automobile registration receipt of defendant Bill Wayne Croney which was marked and introduced into evidence over objection.

Cargill examined the area in front of the club and the field surrounded by the barbed wire fence. He identified two sets of muddy tracks he found in those areas as being made by boots and flat-heeled shoes. He asked for assistance from other law enforcement agencies and gave them the names of the defendants herein, Bill Croney and Buford Dale Croney, as suspects in the commission of the crime of Burglary of the After Hours Club.

He was about one block east of the defendants when they were first taken into custody; this location being some five (5) miles from the club. Buford Dale Croney was wearing a T-shirt and dark trousers: Bill Croney was wearing a dark shirt and light blue trousers, and their trousers were "all torn up." He then identified the trousers each defendant was wearing and they were introduced into evidence. He testified that at the time of the arrest Bill Croney was wearing boots and Buford Dale Croney was wearing flat-heeled slippers. Cargill also identified the previously introduced wire cutters as having been given him by Officer Riley.

Officer Riley was called back to the witness stand and he testified that he had been given the suspects' names when he was informed of the burglary, and that he called them by name when arresting them. He also testified he arrested the defendants about one mile from the burglarized club, although he was not certain about the distance.

The defendants did not testify nor was any evidence introduced in their behalf.

■ The first proposition asserts that the Court erred in overruling defendants' motion to suppress evidence, motion for directed verdict, and motion to dismiss. The defendants contend that the search of the automobile was an illegal search and that the introduction into evidence of items procured by the search was a violation of their rights. The general rule holds that searches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the fourth amendment, subject only to a few specifically established and well delineated exceptions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The defendants contend that Oklahoma recognizes only two exceptions. The first being consent and the second a contemporaneous search incident to a lawful arrest. Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464 (1953), and Graham v. State, 86 Okl. Cr. 9, 184 P.2d 984 (1947).

■ In the instant case the automobile was parked with the trunk and driver's door open near the cut fence with certain fruits of the burglary in the close proximity. Two persons inside the building fled on foot leaving the car behind. The vehicle was searched in the investigation of the burglary some time prior to the arrest of

the defendants. Many of the courts of this country have held that there can be no complaint of illegal search when police officers search without a warrant and seize abandoned property. In People v. Harper, 26 Ill.2d 85, 185 N.E.2d 865, a similar case involving the search of an "abandoned getaway" car, the Illinois Court stated:

"We do not think that the reasonableness of this search is changed by defendant's success in eluding the police. Upon finding the open car abandoned by the fleeing defendant, we think it reasonable that the police in the performance of their duties would look into the car to determine if there were anything there to identify the defendant, or any paraphernalia of the suspected narcotic traffic."

In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, the United States Supreme Court upheld the search of a vacated hotel room. The California Court in applying *Abel, supra,* to the search of an abandoned car stated:

"The analogy between the vacating of a rented hotel room and the abandoned automobile is persuasive. Here as in Abel, the property in question was bona vacantia as far as Smith was concerned. The police were free to seize and search the vehicle without fear of infringing any of Smith's constitutional rights." People v. Smith, 63 Cal.2d 779, 48 Cal. Rptr. 382, 409 P.2d 222, cert. den. 388 U.S. 913, 87 S.Ct. 2119, 18 L.Ed.2d 1353. See also Laws v. State, 6 Md.App. 243, 251 A.2d 237; Croker v. State, 114 Ga. App. 43, 150 S.E.2d 294; Hawley v. Commonwealth, 206 Va. 479, 144 S.E.2d 314; Hiet v. U. S., 125 U.S.App.D.C. 338, 372 F.2d 911.

We are of the opinion that the search of the abandoned car was lawful and falls within the exceptions to the general rule. We find this proposition to be without merit.

The final proposition contends that the Court erred in admitting incompetent, irrelevant and immaterial evidence over the objections of the defendant. Under this general proposition the defendant cites several specific rulings of the trial court as to the admissibility of evidence. We have carefully reviewed each ruling of the trial court and are of the opinion that the rulings of the trial court in each instance were correct and proper.

In conclusion we observe that the record is free of any error which would require reversal or justify modification, the punishment imposed was well within the range provided by law and therefore we are of the opinion that the Judgment and Sentence should be and the same is

Affirmed.