DAVID H. SUMMONS *v.* STATE OF MARYLAND.
[No. 79, October Term, 1928.]

*Decided January 25th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*D. Eugene Walsh,* with whom was *Edward O. Weant* on the brief, for the appellant.

*Robert H. Archer, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *Theodore F. Brown, State's Attorney for Carroll County,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

At the same time the appeal of David H. Summons from the judgment of the Circuit Court for Carroll County in the case considered in the preceding opinion (*ante,* 382) was heard, his other appeal from a sentence of the same court for a similar crime was argued. The questions presented in the second case are sufficiently different to require separate treatment. As in the case first considered, Summons was indicted on two counts which charged him with the crimes of false pretenses and of a conspiracy to defraud. He was tried before the court, acquitted of a conspiracy to defraud, but convicted of obtaining the sum of $5,000 by false pretenses, and sentenced to the penitentiary for a period of five years to run concurrently with his sentence imposed in the case immediately preceding this appeal on the docket of the October term of this court.

The demurrer to the indictment was overruled and the traverser does not argue that there was any error in this ruling nor does the court find any ground for a reversal on this point. Code, art. 27, secs. 555, 558; *Carnell v. State,* 85 Md. 1; *State v. Blizzard,* 70 Md. 387.

The testimony on the part of the prosecution tended to prove that the prisoner was in Carroll County for the purpose of selling the common stock of the Summons Finance Corporation, a Delaware corporation, and that he obtained the sum of $5,000 from the prosecuting witness, Miss Margaret Harris, by a sale to her of one thousand shares of the stock, which had no face value, at five dollars a share, by means of these false pretenses:

1. That a certain G. Harry Bevard had sent the prisoner to the prosecuting witness and had advised that she take $5,000 worth of the stock at once, and that the promissory

note produced by the prisoner was one which the said Bevard requested her to sign.

2. That he had sold stock of the company to G. Harry Bevard and Ivan L. Hoff, an attorney at law.

Accompanying these fraudulent misrepresentations of existing facts was the other false pretense that the stock was productive and the executory concurrent promise that if the stock did not increase to ten dollars a share in four months the prisoner would come back and give the buyer $2,500 for 250 shares. *Bishop on Criminal Law* (9th Ed.), secs. 419-424; *Reg. v. Jennison,* Le. & Ca. 157, 9 Cox C. C. 158; *Reg. v. Bates,* 3 Cox C. C. 201; *Reg. v. West,* Dears & B. 575, 8 Cox C. C. 12; *Reg. v. Fry,* Dears & B. 449, 7 Cox C. C. 394.

The traverser reserved forty-five exceptions to the trial court's rulings on the testimony. Twenty-three of these exceptions are not discussed in the prisoner's brief, and were abandoned on the argument. The court has examined them without discovering any reversible error, as the evidence admitted was either preliminary, or not prejudicial, or relevant and material. The remaining twenty-two exceptions are relied upon by the prisoner to obtain a reversal, and they will now be considered.

1. The prosecuting witness had testified that the prisoner had sold her the stock on April 27th, 1927, and had delivered to her a contract in writing on the back of the receipt, which he gave for the $5,000 which she had paid him for the stock. The contract was produced by the prosecuting witness and referred to by her in testifying; and, when the prisoner did not return within four months and give her $2,500 for 250 shares of the stock, as he had promised, she stated that she wrote to the company and informed it that she had not received any "interest" (dividend) and received a letter in reply that she had destroyed. Over the objection of the prisoner, she was allowed to testify that she had made an unsuccessful effort by correspondence to have the company take the stock off her hands. This testimony was irrelevant, unless it were made relevant and material by some term of

the written contract which is not included as a part of the record, and, therefore, the record does not place this tribunal in the position of the trial judge when he made his rulings on the first, second, and third exceptions. However, if it be granted that the testimony was objectionable, either on the score of its irrelevancy or of its formal defects, it is not perceived how its admission constituted reversible error, since it did not work any injury to the prisoner, in the absence of any testimony that the prisoner had represented that the company would buy the stock.

2. The prosecution produced Ernest E. Weaver, who lived in Wilmington, Delaware, who was a stockholder.in the company, a director from April, 1927, and its treasurer from July 27th, 1927, to January 9th, 1928. Over.the objection of the prisoner, this witness was permitted to testify that a committee had been appointed to investigate the affairs of the company, that he had been its chairman, and that the committee had investigated the financial standing of the company and the conduct of its affairs. This testimony was preliminary, and was of matters within the personal knowledge and experience of the witness, and so it was not necessary to produce the minutes and records of the corporation to show these facts. Accordingly, there was no error in the court's rulings on the twelfth, thirteenth and fourteenth exceptions.

3. Upon the objection of the prisoner, the witness had not been permitted to testify to the value of the stock sold the prosecuting witness, but the court did permit him to state that he knew what property the company had until he severed his official relations with it on January 9th, 1928; and that in one sense it had less property then than in April, 1927. The witness was, also, allowed to say that he knew what property the company had about April 27th, 1927; to specify and locate its realty, and to disclose that the property in Baltimore was listed by the company at certain values, which the witness did not give, except in one instance, when he named the price at which a property in Baltimore was fixed in the lease; to reveal that one of the properties in Baltimore

had been taken over by the holder of the mortgage; and to state that the report to the company, made in the spring of 1927 by the committee of which he was the chairman, showed that $25,000 was the extent of the resources of the company in excess of its liabilities.

The objection to this evidence is on the ground that the testimony of the witness was not the best evidence of the facts narrated. This objection is raised by exceptions fifteen to twenty-two, both inclusive. Much of the testimony was of a preliminary and inconclusive nature, and none of it, even if erroneously admitted, was so prejudicial to the prisoner as to constitute reversible error, except the statement, which was admitted by the ruling on the twenty-second exception, of the relative value of the assets and liabilities as found by the committee of investigation.

The report of the committee was the embodiment in writing of the collective knowledge of the members of the committee after a thorough investigation conducted for the purpose of finding the facts set forth in the report. The chairman himself had devoted two months to this investigation, which, in connection with his having been a director and a treasurer, made him a competent witness to testify from knowledge thus acquired by personal investigation and observation. The testimony of this witness under the twenty-second exception was simply a summation from his official knowledge of the records and property of the company, and is admissible.

The principle is thus stated by *Wigmore on Evidence* (2nd Ed.), sec. 1230: "Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements—as the net balance resulting from a year's vouchers of a treasurer or a year's account in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of a competent witness who

has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper. Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection, if desired, or that the material for cross-examination may be available."

The concluding sentence of this quotation, which states the practice in most jurisdictions, is necessarily subject to the qualification that the proponent of the testimony can produce, or secure the production of, the mass of voluminous testimony so summarily testified to by the witness. In this case the documentary evidence was in the custody of a third party in its principal office in Delaware, and so it was not available, because it was not procurable under a *subpoena duces tecum,* nor was evidence of its contents otherwise obtainable, since a commission to take testimony in criminal cases is not permitted. *Young v. State,* 90 Md. 579, 588; *Gillespie v. State,* 92 Md. 171, 175.

So, where the case is a criminal one and the witness' schedule, summary, or statement is the result of an inspection and knowledge of a large number of books and records in daily corporate use of an uninterested third party at a place located out of the jurisdiction of the court where the witness is testifying, it is sufficiently obvious that the voluntary physical production of these documents in mass in court is so improbable as to render it unnecessary for the proponent of this secondary testimony affirmatively to show that an unsuccessful effort had been made to produce these documents in court for inspection or to furnish material for cross-examination. *Provident Sav. Life Assur. Soc. v. King,* 117 Ill. App. 556, affirmed, 216 Ill. 417.

Where the documents are within the jurisdiction, and the occasion seems to require it, the rule is that they should be either available in court or be made accessible to the adverse party. *Lynn v. Cumberland,* 77 Md. 449, 458; *Blum v. State,* 94 Md. 375, 387; *Newton v. State,* 147 Md. 71, 91.

See *Roberts v. Doxon, Peake,* 116, 170 *Eng. Reprint,* 99;
and also *Gambrill v. State,* 120 Md. 203, 209-212, where the
opinion does not state that books were produced in court.
Moreover, the objection of the prisoner is not because of the
failure of the State to have in court or at hand for his in-
vestigation and information all the corporate documents, but
on the ground that the witness' testimony was not the best
evidence of the fact that the assets of the company were but
$25,000 in excess of its obligations. It is therefore clear that,
on every ground, the testimony given under the twenty-second
exception was admissible.

4. By the court's rulings on the twenty-fifth, thirtieth,
and thirty-first exceptions, the witness was permitted to state
that the company had not sold any of its common stock except
as forming a unit of sale that was composed of one share of
the preferred stock and one share of the common stock; and
that the shares of common stock issued by the company to the
prisoner were not in consideration of any money paid but for
his promotion services. The testimony under the first of
these exceptions purported to be the knowledge of the wit-
ness; but if it be granted, as the prisoner argues, that the
statement was, in effect, based upon an examination of the
company's records by the witness that failed to disclose any
sale of the common and preferred stock other than in a certain
unit, then, upon the principle stated above, this testimony
was admissible. 2 *Wigmore on Evidence* (2nd Ed.), sec.
1231, p. 829; *Gambrill v. State,* 120 Md. 203, 209-212.

5. The testimony offered under the two other exceptions
is not admissible upon the theory that a fact, which can be
gathered only from a mass of documents, may be offered in the
form of the testimony of a competent witness who has so mas-
tered the documents as to be able to state that fact, since the
proof offered related to a single transaction wherein the
prisoner acquired his stock by virtue of a particular contract.
Since the minutes of a corporate transfer of stock in consid-
eration of the services of a promoter of the corporation are
usually the primary evidence of the contract, the minutes
should be offered. *Harrison v. Morton,* 83 Md. 456, 475; 2

*Machen on Corporations*, secs. 1120-1126. If secondary evidence of the minutes is offered, the ground for the non-production of the original documentary evidence would not commonly be either the number or the volume of the documents. So, secondary testimony would not ordinarily be received to establish the minutes until the proponent of the testimony would introduce affirmative evidence which would excuse the non-production of the primary or best proof.

If the documentary evidence is held by a known third party out of the jurisdiction of the trial court, legal process is unavailing to obtain its production. The possessor, however, may be requested to appear with the document or to deliver the document for use at the trial; or, if it be not for offer in a criminal trial, a deposition may be taken and the document proved and incorporated therein. But, as further pointed out by Wigmore, "No one or more of these efforts could be required as a fixed rule, nor do the courts seem to make any such fixed requirement." The weight of practice in other states is that the mere fact that the document is out of the jurisdiction will be sufficient without any other preliminary affirmative testimony of effort on the part of the proponent to procure the presence of the original document. 2 *Wigmore on Evidence* (2nd Ed.), sec. 1213; *L. R. A.* (N. S.) 1917D, pp. 530-549. In Maryland, however, the rule in civil actions at law or in equity is somewhat different, and the proponent must convince the court by testimony that he has made an effort of some kind to produce his primary evidence. The nature of this effort must depend on the circumstances of each case, and the better practice would seem to leave the matter increasingly in the sound discretion of the trial court. The decision in *Seaboard A. L. Rwy. Co. v. Phillips*, 108 Md. 285-299, stated the rule in civil cases to be that "without a proper foundation explaining the failure to produce original written instruments of evidence, parol evidence of their contents is not admissible." In this case the court declared that the defendant could not offer in evidence either a copy or parol testimony of the contents of a letter alleged to have been written by the plaintiff to his consignees, who were resi-

dents of another state, on the ground that there was no evidence tending to show the loss or destruction of the letter itself, or any effort by the defendant to secure its production. See *Heiskell v. Rollins,* 82 Md. 14, 16; *Reynolds v. Manning, Stimpson & Co.,* 15 Md. 510, 523, 524.

A distinction is to be noted in criminal cases, since, as was decided in *Young v. State,* 90 Md. 579, 588, there is in Maryland neither statute nor practice nor inherent power permitting depositions taken out of the state to be read in evidence in criminal cases. So, in *Gillespie v. State,* 92 Md. 171, 175, where the question was whether a witness could be contradicted by the production of a newspaper containing a publication of his original letter, which had been sent out of the state and there printed, but "whose loss was not accounted for or even alleged," this court said: "It is clear, therefore, that independent of the question as to whether the original letter written by the witness was correctly reproduced in the written copy, the letter was admissible to contradict him, he having admitted its correctness, and that inasmuch as the original was conceded not to be in his possession, but beyond the jurisdiction of the court, it would have been folly to give him notice to produce it. Nor was it possible in a criminal case to get possession of the original letter either by commission or otherwise. *Young v. State,* 90 Md. 588. The printed letter, therefore, was admissible for the purpose for which it was offered, namely, to contradict the witness, and a general objection to it was properly overruled."

It follows that all the proponent could reasonably be expected to do in criminal cases would be to request the stranger having custody of the documentary original to produce it at the trial, or to deliver it to him for that purpose. Since the offer is to substitute secondary evidence for primary evidence, it is a sound practice that requires the proponent to lay the foundation for its introduction by showing why the best evidence is not available. He should be required to demonstrate that his resort to secondary evidence is due to necessity and not to preference. The extent of this preliminary proof of an effort to procure the primary evidence would vary with

the circumstances of the case, and would be controlled by the exercise of the trial court's sound discretion, but it should satisfy the court that a reasonable effort had first been made or that it would have been useless. This is especially true where the secondary evidence is not even a copy of the original document, but a witness' recollection of its terms or purport. See 2 *Wigmore on Evidence* (2nd Ed.), sec. 1213.

In the present case, no foundation appears to have been laid for the introduction of the secondary evidence, but later on it developed on cross-examination that the documents in question could not have been produced by the witness and that, according to his information, the officers of the company had declined to let the documents be brought. The tenor of the cross-examination by the prisoner indicated that this information was correct. And, finally, the testimony objected to did the prisoner no injury, as it simply showed he was paid for his services with common stock. There is no testimony that the services had not been performed, or that the number of shares received as compensation was excessive.

The remaining exceptions present no questions which require discussion; and it will be sufficient to say that no reversible error is found on this record. *Moon v. State,* 149 Md. 298, 303.

*Judgment affirmed, with costs.*

OFFUTT, J., dissents.