## JAMES THOMAS *v.* STATE OF MARYLAND

[No. 177, September Term, 1967.]

---

*Decided April 18, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Richard K. Jacobsen,* with whom was *James J. White, III,* on the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William Parsons Fennell, State's Attorney for Kent County,* on the brief, for appellee.

PER CURIAM.

The appellant was found guilty by a jury in the Circuit Court for Kent County of five offenses of uttering a false check. On each offense the judgment of the court was that he restore the property taken or pay the full value thereof. He was sentenced to imprisonment for a term of 2 years on the first offense. A like term was imposed on each of the other four offenses, each of those sentences to run consecutively with each of the sentences imposed prior to it.

On appeal the appellant attacks the validity of each of the judgments by contending that the lineup in which he appeared was not conducted in a fair and impartial manner. The short answer is that testimony as to the identification of the appellant

at the lineup and his identification in court came into evidence in the State's case on direct examination of a police officer and six other witnesses without objection and the witnesses were cross-examined at length on the matter by appellant's counsel. There was no motion to strike the testimony. The point not being tried and decided by the lower court, it is not properly before this Court and we do not deem it necessary or desirable for us to decide it within the purview of Md. Rule, 1085. See *Bell v. State,* 2 Md. App. 471.

The appellant attacks two of the judgments against him on the ground that the evidence was not sufficient to sustain the convictions with regard to them.[1] The arguments as to the sufficiency of the evidence with respect to the challenged convictions go only to the identification of the appellant.

Evidence adduced by the State showed that 100 blank drafts of the United States Fidelity and Guaranty Company, numbers 222301 to 222401, had been found to be missing from that Company's supply. Five of them, numbers 222313, 222314, 222316, 222317 and 222399, proved to be forged, were the basis of the charges against the appellant. Each of them, the blanks filled out by typewriter, were identical except for a fictitious claim number. Each was dated July 5, 1966, payable to the order of Lloyd Dover, 4008 Cedardale Rd., Baltimore 15, Maryland, in the amount of $95 and designated the date of the accident as February 17, 1966. Each bore an unauthorized countersignature, "Van Crawford" and each was endorsed "Lloyd Dover."

Mathilda Wessell, a note teller of the Maryland National Bank, testified that she cashed draft No. 222314. Asked who gave her the check to cash she said, "I think it was the defendant, but I am not absolutely sure. It was a busy evening." She designated the appellant as the man to whom she referred. She said she had identified the appellant at a lineup. "I picked him out among the group that was there. As I say, the night

---

1. The record includes a written motion for judgment of acquittal which was presented to the court and denied at the close of the evidence offered by the State and "re-presented" and denied at the close of all the evidence. The motions and actions thereon do not appear in the transcript of the trial but are reflected in the docket entries.

I cashed the check it was a busy evening, but he was the one that I thought, felt pretty sure was the man I cashed the check for." She also had picked his photograph from among four photographs shown her. She had no difficulty picking out the photograph of the appellant. "I thought it was the picture. I knew it wasn't any of the others. I felt pretty sure that this was the picture of the man I had seen, that I cashed the check for. I knew it was not any of the other pictures that I saw." On cross-examination she said, "I feel sure it was the defendant. I couldn't swear to it." Asked, "You're not positive?" she replied, "No sir." The police officer who conducted the lineup testified that she had picked the appellant "out as the man who had cashed the check" but as she "walked out in the hall (after viewing the lineup) she said, 'I'm sure that's him, I'm almost sure that's him.' "

Alex Rasin, an employee of The Peoples Bank of Chestertown testified that he cashed draft No. 222317. The appellant and another man came into the bank and came up to the window. Rasin identified the appellant as one of the men. He had been shown some photographs but was unable to identify the appellant from the photographs shown him. Later he attended a lineup and "I was able to positively point out the defendant as one of the two men that presented the check to me * * * I had no difficulty whatsoever then." Asked during his testimony, "Do you have any doubt now that the defendant in the Courtroom today was one of the men that participated in this transaction wherein a check was cashed by you at People's Bank * * *?" he replied, "No sir, no doubt whatsoever." The police officer who conducted the lineup testified that when Rasin viewed the lineup "he pointed to the defendant as the one immediately as he walked in the room." But while Rasin was positive in his identification of the appellant as one of the two men who came up to his window and requested the draft be cashed, he could not say which of the two endorsed the check and showed him a Maryland driver's license for identification, representing himself as "Lloyd Dover." He said, "I cannot remember which one presented the check. They were together and one of them presented it and one of them signed it and one of the men is the defendant."

The five indictments under which the appellant was charged were consolidated for trial. There was evidence before the jury, as the appellant concedes, sufficient to prove beyond a reasonable doubt that the appellant had uttered three other similar false drafts about the same time he uttered the two here discussed. The evidence with regard to those other three charges was relevant, not only as to the guilt of the appellant as to those specific charges, but also as to his guilt with respect to the drafts cashed at the Maryland National Bank and The Peoples Bank of Chestertown. The Court of Appeals said in *Ward v. State*, 219 Md. 559, 562-563:

> "An accused must be convicted by evidence which shows that he is guilty of the offense charged; and, under ordinary circumstances, evidence that he has done other acts which constitute a crime has no relevance towards showing that he did that with which he is presently charged. If, however, the evidence of another offense has a natural tendency to establish, or offers a reasonable presumption or inference as to, a principal fact at issue or matter in dispute, it should be admitted even though it discloses other offenses. (cases cited). This Court said in *Purviance v. State*, 185 Md. 189, 196: 'While guilt cannot be established by proving that the defendant has committed other crimes, it is firmly established that evidence of acts may be admitted to show motive, intent, absence of mistake or accident, a common scheme, or identity embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other.' "

Thus the evidence as to the cashing of substantially identical drafts at three other places, at about the same time as the cashing of the two drafts which were the basis of the charges here challenged, was relevant with respect to convictions here attacked on the element of guilty knowledge of the appellant in uttering the drafts, on the issue of a scheme or plan to cash a series of identical forged drafts to obtain goods and money from various merchants and business establishments and on the ques-

tion of identity. *Bishop v. State,* 55 Md. 138; *Bell v. State,* 57 Md. 108; *Lyman v. State,* 136 Md. 40; *Mazer v. State,* 212 Md. 60. Further, with regard to the testimony of Mrs. Wessell, the lack of positiveness of the identification of the appellant affected only its weight and the sufficiency of the identification was a matter for the jury to determine. *Logan v. State,* 1 Md. App. 213, 217. And with regard to the testimony of Rasin, it is clear that the appellant was one of the two men who participated in the cashing of the draft. It was immaterial whether the appellant was the one who in fact physically presented the draft to Rasin or was the other participant. Assuming that he was not the one who actually presented the draft and forged the endorsement, by his presence in concert with the actual perpetrator, in a position to assist if necessary, or prevent interference or detection, or for the purposes of encouragement at the moment of the commission of the felony, he was a principal in the second degree, the evidence showing that the one here assumed *arguendo* to have presented the check was a principal in the first degree. *Agresti v. State,* 2 Md. App. 278, 280; Md. Code (1967 Repl. Vol.), Art. 27, § 44. As to indictment, conviction and punishment, there is no distinction between principals in the first and second degree. *McEntire v. State,* 2 Md. App. 449, 453.

This Court does not weigh the evidence presented to the jury, but only determines its sufficiency to take a particular issue, or the entire case, to the jury, when the point is properly preserved. It has been consistently held that in order to overturn a judgment entered on a verdict of a jury for insufficiency of the evidence it is necessary that there be no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Quinn v. State,* 1 Md. App. 373, 375. In the instant case, we find that there was such legally sufficient evidence before the jury.

*Judgments affirmed.*