# JOHN L. AVERY *v.* STATE OF MARYLAND

[No. 537, September Term, 1971.]

*Decided June 30, 1972.*

522

524

The cause was argued before ANDERSON, MORTON and CARTER, JJ.

*Walter H. Madden* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *William T. Wood, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant John Lawrence Avery, M.D., was convicted by a jury in the Circuit Court for Montgomery County of assault and battery upon Eileen K. Hall and sentenced to five years in prison by Judge Joseph M. Mathias. The last three and one-half years of the sentence were suspended. He appeals from this judgment contending that the trial court committed numerous prejudicial errors as hereafter related. The indictment consisted of four counts charging the appellant with attempted rape, assault with intent to rape, assault and battery, and assault, respectively.

## FACTS

The evidence adduced by the State showed that the victim was a twenty-year-old single girl who had been a patient of the appellant for about two years prior to the incident. On January 16, 1971, the appellant conducted part of a physical examination of Miss Hall in his office. Rather than have her come back, he suggested that he

could stop by her apartment on his way to a medical meeting and complete the examination. On the afternoon of January 25, he telephoned her and stated he would stop at her apartment that evening and requested that she have her bed pulled out and have on her bed attire so he could finish the examination. When he arrived, they sat a table in the living-dining room of her efficiency apartment. During the course of his examination, he inquired how she was sleeping and she replied not too well. When he asked if she would like something to help her sleep, she did not object and while they were still seated at the table, he gave her an injection in her arm. Immediately, she lost consciousness. When she awakened she was lying on her sofa-bed with the appellant lying beside her. Her clothing from her waist down had all been removed except her underpants which were around her ankle. When she realized the appellant was sexually molesting her, she was shocked and frightened but kept her eyes closed so as not to indicate to him that she was conscious for fear he might seriously harm her. At that time the phone rang whereupon the appellant arose from the sofa-bed and said to her, "Your phone is ringing." She then sat up and replaced her clothing. He said to her, "You really had a bad dream," advised her he had finished his examination, and departed.

After the appellant left, she called a male acquaintance who lived in the same apartment house and informed him what had occurred. She and her friend then went for a ride and dinner. During the evening she decided to have a blood test made to determine the contents of the injection and about 1:30 a.m. went to the Holy Cross Hospital for that purpose. While at the hospital, she related the incident to two policemen who were there in connection with another case. They advised her to report the matter to the Detective Bureau in Montgomery County, which she did later that same day. In reporting the incident, Miss Hall protested to Lieutenant Robertson that no one would take her word against that of a doctor. The Lieutenant instructed her to keep up her contacts with the

doctor and advise him of all future developments. Later that day the appellant telephoned her and requested that she call him in two weeks concerning the effect of the medication he had given her. She advised Lieutenant Robertson of this call and was instructed to call the appellant as the appellant had suggested. Accordingly, she did so on February 8 and 22. On February 22 the appellant prescribed additional medication and advised her he could give her some of the tablets in his office or he could phone the prescription in to the drugstore, whichever she preferred. She replied whatever was easiest for him would be satisfactory to her. He then suggested that since he was going by her apartment that week on his way to the hospital, he could deliver the medicine to her apartment and inquired what night would be convenient. They agreed on February 25 at 8:00 p.m. Promptly after this arrangement had been made, Miss Hall called Lieutenant Robertson and advised him of the development.

Upon receipt of this information, Robertson made arrangements to have a closed-circuit television camera concealed in a shoe box in Miss Hall's apartment, number 202, and a monitor installed in the adjoining apartment, number 203. The purpose of the installation was to conduct a police surveillance of the appellant's contemplated visit to Miss Hall's apartment. This purpose was fully understood and agreed to by both Miss Hall and her neighbor. The appellant arrived at Miss Hall's apartment at 8:02 p.m. on February 25. At that time the television equipment was operating with Lieutenant Robertson, Corporal Miller, Detective Gibson (a woman), Dr. Reap, an Assistant Medical Examiner for Montgomery County, and the neighbor all looking at the monitor.

When the appellant arrived, he sat on the couch beside Miss Hall. He then brought out a small package of pills and gave her some instructions as to their use. He advised her that the pills might disturb her sleep and inquired how she was sleeping. She said not too well. He opened his bag, brought out a hypodermic needle and asked her about giving her something to help her sleep.

(This was the same question he had posed to her on January 25.) She indicated that whatever he determined was best would be agreeable to her. The appellant then gave her an intravenous injection in her arm and almost inmediately she lost consciousness. The five persons who witnessed the event on television all testified to substantially the same facts. Their testimony showed that a few seconds after the injection, Miss Hall's head began nodding back and forth and she fell against the appellant. Thereupon the appellant placed his arm around her, pulled her to him, and put his hand on her breast. When she had entirely stopped moving, he leaned her back against the couch, stood up, removed his coat, and sat back down on the couch. He then pulled her onto his lap and placed his left hand between her legs in the area of her genitalia. He then removed her clothing from the waist down. At this point Lieutenant Robertson and Corporal Miller left the monitor and upon a signal from Dr. Reap went to apartment 202 and entered with a key which Miss Hall had previously given them. Upon entering the apartment they observed Miss Hall in an unconscious condition on her back on the couch with the appellant on top of her. Lieutenant Robertson identified himself and placed the appellant under arrest. Thereafter Dr. Reap and Detective Gibson entered apartment 202, assisted Miss Hall in dressing, and Dr. Reap took a blood sample from her arm for testing.

The appellant did not testify. He offered the medical records of Holy Cross Hospital which showed that a complete vaginal examination of Miss Hall was conducted at that institution at about 12:30 a.m. on January 26. This examination disclosed no evidence that sexual intercourse had occurred in the immediate past. He also produced an expert television engineer who testified that placing the television camera in question in a shoe box and operating it for several hours prior to 8:00 p.m. on February 25, as was done in this case, would tend to diminish the clarity of the picture. He further stated that the picture produced by the television equipment used in

this instance was inferior to the commerical type of television used in homes. The appellant also produced a number of friends and neighbors who testified to his good character and reputation.

## CONTENTIONS

### I and II

Since both contentions 1 and 2 concern pre-indictment publicity, they will be considered together. The appellant's first contention is that the court erred in denying his pre-trial motion to dismiss the indictment because the pre-indictment publicity was so great as to preclude the grand jurors from making an independent decision and therefore deprived him of due process. His second contention is that the court erred in denying his motion for production of the grand jury minutes concerning the return of the indictment. He alleged he was entitled to these minutes in order to ascertain if there was any voir dire examination of the grand jurors to determine whether they were disposed to indict the appellant, irrespective of the evidence produced before them, because of the pre-indictment publicity.

The evidence showed that subsequent to a preliminary hearing on March 17, 1971 and prior to the indictment on March 29, 1971, articles concerning the appellant's conduct, as charged in the indictment, appeared in several newspapers having a general circulation in Montgomery County. The articles in substance recited the facts shown by the State's evidence concerning the crime charged, as heretofore related, and made a brief reference to an incident between Miss Hall and the appellant that occurred prior to February 25. Reference was also made to a trial in 1966 where the appellant had been acquitted of charges of abortion and assault on a patient. There is no showing that any of the grand jurors who returned the indictment against appellant were apprised of the information contained in the newspaper articles. Even assuming they were so informed, the contention is with-

out merit. In *Coblentz v. State,* 164 Md. 558,[1] the Court of Appeals said at page 570:

> "* * * The grand jury, as has been observed, is not a judicial body; it is an accusing body, permitted to act upon knowledge obtained by its members *from any source.* * * * But there are no statutory provisions in Maryland, as there are in some other states, prescribing additional cautions of qualifications, and we find no ground for imposing a requirement that they must be *unprejudiced,* as the objection demands. * * *" (emphasis supplied.)

38 Am. Jur. 2d, *Grand Jury,* § 7 states:

> "Generally, in the absence of a controlling statutory provision, a person is not disqualified or incompetent to serve as a grand juror by reason of bias or prejudice on his part, by the fact that he has heard or read about the case under investigation * * *."

Since the prejudice of the grand jury is not grounds for attacking the validity of the indictment, the appellant did not show a particularized need for the minutes by alleging he wanted them for this purpose. In *Grimm v. State,* 6 Md. App. 321, this Court, in speaking of the right of an accused to grand jury minutes, said at page 331:

> "* * * At the very most, *Dennis* [*Dennis v. U. S.* 384 U. S. 855] makes clear that it is only upon a showing of a 'particularized need' that an accused might be entitled in a proper case to such disclosure. * * *"

We find no error in the court's denial of the motion for production of the grand jury minutes.

---

1. *Coblentz v. State, supra* is reported in 88 A.L.R. 900 and used as the basis for an annotation.

## III

The appellant's third contention is that the court erred in denying his demand for a bill of particulars to the indictment with respect to what conduct of the appellant was part of his professional relationship with Miss Hall and what part was claimed by the State to be criminal acts. In *Wilson v. State*, 4 Md. App. 192, this Court said at page 202:

> "Maryland Rules of Procedure, 715 a provides that the court may order the filing of a bill of particulars. But a defendant is not entitled thereto as of right. The grant or refusal of particulars is within the sound discretion of the trial court and this Court will not reverse a denial of particulars unless there has been a gross abuse of discretion resulting in injury to the accused. *Pearlman v. State*, 232 Md. 251, 261. Bills of particulars are intended to guard against the taking of an accused by surprise by limiting the scope of the proof. *Hadder v. State*, 238 Md. 341, 351. * * *"

We further held in *Polisher v. State*, 11 Md. App. 555, 587 that Md. Rule 715 a does not contemplate that the State shall particularize all the evidence that it intends to offer. The record in the instant case showed that on May 16, 1971[2] the State's Attorney turned over his entire file to counsel for the appellant. There is no showing of any surprise to the appellant in respect to the evidence offered by the State concerning his conduct toward Miss Hall, irrespective of whether it be characterized as professional or criminal. Therefore, there was no abuse of discretion in the trial court's ruling denying the demand for particulars.

## IV

The appellant next contends it was prejudicial error for the court to refuse his motion to waive is right to a

2. Trial began June 8, 1971.

public trial and to grant him a private trial. In *Cox v. State,* 3 Md. App. 136, this Court said at page 139-140:

"It is true that the Sixth Amendment to the Federal Constitution guarantees to an accused 'the right to a speedy and public trial.' But we do not read this guarantee as carrying with it a right in the accused to demand a private trial. Under our form of government, secrecy in any phase of its administration is abhorrent; secrecy in the administration of justice is intolerable. Our citizens have the same interest in insuring that fair play is accorded an accused at trial as they do in seeing that the rights of society are preserved and respected in the trial of an alleged offender against its laws. See *E. W. Scripps Co. v. Fulton,* 100 Ohio App. 157, 125 N.E.2d 896. This is not to say that a trial judge does not have some latitude in the conduct of the trial proceedings to make selective exclusions of members of the public where no prejudice to the accused results. The Court of Appeals of Maryland recognized this in *Dutton v. State,* 123 Md. 373 (at p. 387) : 'In determining whether any part of the public should be excluded from the trial of a criminal case, some discretion must be allowed the trial court.' We find no merit in the Appellant's contention that it was error to deny him a private trial."

In *Singer v. United States,* 380 U. S. 24, the Supreme Court held that trial by jury as guaranteed by the Sixth Amendment to the Constitution could be waived by an accused but that Federal Procedure Rule 23 (a) which conditioned his right to do so upon the court's approval and the government's consent violates no provision of the Federal Constitution. In so holding, the Court said as a matter of dictum at page 34-35:

"The ability to waive a constitutional right does not ordinarily carry with it the right to in-

sist upon the opposite of that right. For example, although a defendant can, under some circumstances waive his constitutional right to a public trial, he has no absolute right to compel a private trial, * * *."

We find no error in the court's ruling.[3]

## V, VI, and VII

Since contentions 5, 6, and 7 all involve the same question, they will be considered together. The basic question is whether the court erred in permitting the State, over the appellant's objection, to refer to his conduct toward Miss Hall on January 25 when he was on trial only for his alleged criminal conduct toward her on February 25. By contention 5 he claimed the court erred in refusing his request that the prosecutor be prohibited from referring to events that occurred on January 25 in his opening statement to the jury. The Court denied the appellant's request and the opening statement of the State's Attorney did contain the details of the occurrence on January 25 which he expected to prove. Obviously, if the evidence to which the prosecutor referred in his opening statement was admissible at the trial, he was entitled to make reference to it in his opening statement. In *Gordon v. State,* 5 Md. App. 291, we said at page 306:

"* * * [T]he rule is that evidence of other crimes is admissible to prove the specific crime charged when such evidence tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of the

---

3. The hearing of preliminary motions prior to selecting the trial jury was held privately in order to avoid unnecessarily informing prospective petit jurors in advance of the trial of the evidence they would probably hear and consider.

crime on trial. To like effect, see *Jones v. State,* 4 Md. App. 445; *Thomas v. State,* 3 Md. App. 708; *Gilchrist v. State,* 2 Md. App. 635; *Loker v. State,* 2 Md. App. 1; *Gorski v. State,* 1 Md. App. 200."

The evidence showed that the appellant's conduct toward Miss Hall on February 25 was the same type as that which he had exhibited toward her on January 25. The two incidents were so related to each other that the proof of one tended to establish the other. Together they tended to show a common scheme or plan on the part of the appellant to sexually molest Miss Hall after causing her to become unconscious. Furthermore, the events that occurred on January 25 tend to establish the appellant's motive and intent in respect to his conduct on February 25. We therefore conclude, under the holdings in *Gordon v. State, supra* and the cases therein cited that evidence of the appellant's previous conduct toward Miss Hall was admissible. Consequently, the court was not in error in refusing to prohibit the prosecutor from referring to the events of January 25 in his opening statement to the jury which was the basis of the appellant's fifth contention. His sixth contention that the court erred in failing to grant his motion for a mistrial because of the prosecutor's remarks and his seventh contention that the court erred in failing to grant his motion for a judgment of acquittal for the same reason are likewise without merit.

## VIII

Contention 8 claims that the trial court committed prejudicial error by admitting, over the appellant's objection, evidence of his conduct toward Miss Hall on January 25. We have already held under contentions 5, 6, and 7 that this evidence was relevant and admissible in proving the crime charged on February 25. However, it is the appellant's further contention that even assuming this evidence was relevant, it was nevertheless improperly admitted because at the time of its admission

the State had not established prima facie the commission of the crime charged on February 25. He relies for support of this contention upon *MacEwen v. State*, 194 Md. 492, (1949) and *Polisher v. State, supra.* In *MacEwen* the Court of Appeals in dealing with the question of the order of proof of criminal acts of the accused other than those for which he was on trial stated at page 502:

> "* * * The law does not permit the proof of any such extraneous matter until the State has offered evidence which shows *prima facie* guilt [of the offense charged] * * *."

In *Polisher* this Court interpreted the holding in *MacEwen* regarding the required order of proof by holding at page 585, that *MacEwen* "does not mean that the State must first establish prima facie every element of the crime charged, for it is the evidence of other offenses which may prove some of the elements of the crime charged."

Even assuming that it was error for the trial court to have admitted evidence of the collateral offense of January 25 before first requiring the State to introduce some clear evidence of the commission of the offense charged, we hold that it was harmless error. Immediately after the evidence concerning the incident of January 25 was introduced, the State introduced its full evidence concerning the incident of February 25. Notwithstanding that this order of proof was contrary to the rule, there is no showing that the jury was confused or misled because of it nor that there was any reasonable possibility that the error might have contributed to the appellant's conviction. It has been repeatedly held that while an accused has a constitutional right to a fair trial "he does not necessarily have a right to a perfect trial." See *State v. Babb*, 258 Md. 547, 552; *Bailey v. State*, 6 Md. App. 496, 508. We therefore find contention 8 is likewise without merit.

## IX, X, and XI

Contentions 9, 10, and 11 all relate to the refusal of the

complaining witness (Miss Hall) to waive her right to require the hospital to treat the records of her psychiatric diagnosis and treatment as confidential information. Contention 9 claims the court erred in denying the appellant's motion to compel the State to produce these psychiatric records for his inspection or in the alternative to dismiss the indictment with prejudice.

Miss Hall testified that she had attended the Community Psychiatric Clinic in Montgomery County from October to December 1970 to find out what was wrong with her physically because she was continuing to have female problems and was continually tired notwithstanding the appellant's prescriptions. She further testified, without contradiction, that she advised the appellant on January 16, 1971, that she had "started to go to the Community Psychiatric Clinic because I am just so physically sick." Counsel for the appellant claimed the first time he knew of the existence of the psychiatric records was when Miss Hall mentioned her treatment by the Clinic in her testimony at the trial on June 9. He immediately moved the court to compel the State to produce these records. Miss Hall then refused to waive her right to have them treated as confidential under Md. Code, Art. 35, § 13A, sub-section (b) which provides:

"Except as hereinafter provided, in civil and criminal cases, * * *, a patient, or his authorized representative, has a privilege to refuse to disclose, and to prevent a witness from disclosing, communication, wherever made, relating to diagnosis or treatment of the patie t's mental or emotional disorder, provided, that the presiding judge of a court of record may compel such disclosure in cases involving the custody of children, * * *."

Sub-section (c) provides for six exceptions to the general prohibition set forth in (b), none of which are applicable to the facts in the instant case. After Miss Hall refused to waive her right under the statute, Judge Mathias de-

nied the motion to require the State to produce the records for examination by the appellant. Under contention 9 the appellant claims (1) that Miss Hall as the complaining witness was an agent of the State and as such was not entitled to the protection of the statute; (2) since the statute allows the records to be produced, in the court's discretion, in a child custody case but denies their production in the case of a sexual offense involving capital punishment, it violates the appellant's constitutional right to due process and fundamental fairness; and (3) that the rights guaranteed him by the Sixth, Eighth, and Fourteenth Amendments to the Federal Constitution and Articles 5, 16, 21, 23, 44, and 45 of the Maryland Declaration of Rights have been violated. He further points out that Md. Rule 422 c permits the court to take whatever action it deems appropriate (including dismissal of the indictment) if a party refuses to produce documents or records and that Md. Rule 701 states that the Md. Rules are intended to provide for the just determination of all criminal causes.

In respect to the appellant's claim (1) the fact that Miss Hall as the victim of a crime is the complaining witness used by the State in the prosecution of the instant case does not ipso facto cause her to become an agent and representative of the State. As a cooperative victim, she assisted the police in their investigation of the case. As the prosecuting witness at the trial, she testified to what she had observed and heard concerning the appellant's conduct. She was in no sense an agent of the police or of the State. We hold that the statute (Art. 35, § 13A) did apply to Miss Hall in the capacity she occupied at all times as a private citizen and patient.

The appellant's claim (2) is also without merit. Here he contends that the failure of the statute to permit the trial judge to compel the production of a psychiatric patient's records in a case involving a sexual offense as well as in a case of child custody violates his constitutional rights. We disagree. This so-called discrimination is not a violation of the equal protection clause because

a person accused of a serious sexual offense is in an entirely different class than an infant child whose custody is under consideration. The equal protection clause requires only that the laws treat persons equally who are in the same class and under like circumstances. See *Eggleston v. State,* 209 Md. 504, 515; *Mullen v. Director,* 6 Md. App. 120; *Johnson v. State,* 3 Md. App. 105.

The appellant baldly asserts in (3) and (4) that the statute as a whole is unconstitutional because it denies him due process and fundamental fairness in prohibiting him from examining the victim's psychiatric records. We find no merit in the argument. The privilege of non-disclosure afforded by the statute is facially constitutional and appellant cites no authority, constitutional or otherwise, which would nullify the protection extended by the statute. Where, as here, the witness claimed the privilege, no suppression of evidence by the State is involved within the contemplation of such cases as *Brady v. Maryland,* 373 U. S. 83, 10 L.Ed.2d 215, 83 S. Ct. 1194 or *Giles v. Maryland,* 386 U. S. 66.

The appellant cites *United States v. Hillard,* U.S.D.C. (Calif. May 4, 1971) 30 U.S.L.W. 2679-80; *Brady v. Maryland, supra* and refers to two military cases without citations against Officers Rheault and Moresco in support of his motion. None of the holdings in these cases are apposite to the facts in the instant case. In all of them the information sought by the defendant was in the possession or under the control of agents of the government as the prosecuting *party*. In the instant case it was under the control of the complaining *witness*.

Md. Rule 422 c prescribes sanctions to be applied for the violation of court orders dealing with depositions and discovery in civil actions under the provisions of Chapter 400 of the Maryland Rules and is not applicable to criminal causes. Md. Rule 701 deals with the interpretation of the Rules set forth in Chapter 700 concerning criminal causes. The suggested dismissal of the indictment is not predicated upon any Rule in Chapter 700 and therefore Rule 701 is not applicable.

We therefore conclude that the appellant has not shown that he was deprived of any of his constitutional rights by the refusal of Miss Hall to allow him to inspect her psychiatric records under the authority of Art. 35, § 13A. Therefore the court did not err in denying the appellant's motion to compel the State to produce these records or in the alternative to dismiss the indictment with prejudice.

Contention 10 claims that the court erred in denying the appellant's motion to require an in-camera inspection of the psychiatric records. Since we have already held the appellant was not entitled to inspect the records, it is clear no useful purpose would be served by having the court make a personal inspection of them. We therefore hold there was no error in the court's denial of this motion.

Contention 11 claims the court erred in denying the appellant's motion to strike the testimony of Miss Hall after she refused the appellant permission to inspect her psychiatric records. Inasmuch as we have already held the appellant was not entitled to inspect these records, there was no error in the court's denial of this motion.

## XII

Contention 12 claims the court erred in denying the appellant's motion to dismiss the indictment because of the failure of the State to advise the appellant in advance of the trial that the prosecuting witness had been a patient at a psychiatric clinic within a few months prior to the alleged offense and that she had attempted to commit suicide within two days after the offense occurred. In respect to the psychiatric treatment the undisputed evidence shows Miss Hall personally informed the appellant on January 16 or more than four months prior to trial that she was a patient at the Community Psychiatric Clinic in Montgomery County. In reference to the "suicide gesture", the evidence shows that counsel for the appellant was made aware of this fact during the course of the trial and subpoenaed the hospital records concern-

ing the incident. When it developed there were no hospital records, the testimony of hospital personnel was introduced to show that Miss Hall had refused treatment for her cut wrists. We hold that in these circumstances there was no showing of any prejudice to the appellant by reason of the delay in his becoming informed of the "suicide gesture." We therefore conclude there was no error in the court's denial of this motion.

## XIII

By contention 13 the appellant claims that the court erred in denying his motion to suppress all evidence obtained by reason of the television viewing of the events that occurred in Miss Hall's apartment on February 25. The first reason assigned in support of this contention is that it was an unlawful invasion of the appellant's right of privacy under the Fourth Amendment. In support of this claim, he cites *Katz v. United States,* 389 U. S. 347, 19 L.Ed.2d 576, 88 S. Ct. 507. In that case the Court held that the attachment of an electronic listening and recording device to the outside of a public telephone booth by government agents constituted a search and seizure of a conversation within the meaning of the Fourth Amendment. In *Katz,* the Court also repudiated the trespass requirement previously enunciated in *Olmstead v. United States,* 277 U. S. 438 and *Goldman v. United States,* 316 U. S. 129 as no longer necessary to invoke Fourth Amendment protection. In so holding the Court declared the interception of a telephone conversation of the defendant to be an unreasonable and unlawful invasion of his constitutional "right to privacy" and suppressed the evidence procured by the electronic interception. However, we hold that the rationale of *Katz, supra* is not apposite to the circumstances of the instant case. The reason is that in the instant case we have an electronic interception and video transmission of the conduct of the accused toward the victim while in the victim's house which was transmitted to the police *with the full cooperation and consent of the victim as a party to*

*that conduct.* The situation here is comparable to one where the conversations between a government agent and the accused are transmitted to police authority by a radio transmitter secreted on the person of the government agent (informer) with the cooperation and approval of the agent. In this situation the United States Supreme Court has recently held in the case of *United States v. White,* 401 U. S. 745, 28 L.Ed.2d 453, 91 S. Ct. 1122 that the transmission of such a conversation did not constitute an unreasonable seizure in violation of the accused's rights under the Fourth Amendment. In so holding the Court said at pages 751-752:

> "Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States,* 385 U. S., at 300-303, 17 L.Ed.2d at 381, 382. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra* [373 U. S. 427]; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States, supra* [343 U. S. 747]. *If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and*

*whose trustworthiness the defendant necessarily risks.*

"* * * Our problem, in terms of the principles announced in *Katz,* is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and *Lewis* [*Lewis v. United States,* 385 U. S. 206, 17 L.Ed.2d 312, 87 S. Ct. 424]. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See *Lopez v. United States,* [*supra*]. * * *" (emphasis supplied.)

We conclude that the rationale of *United States v. White, supra* rather than *Katz, supra* is applicable to the situation in the instant case. If the transmittal of the verbal *conversation* to the police through the cooperation of an informer does not constitute an unreasonable seizure in violation of a "justifiable expectation of privacy" in *White,* we see no good or sufficient reason to conclude that a video transmittal of the accused's conduct brought about by the cooperation of Miss Hall should be interpreted as constituting an unreasonable seizure in violation of the appellant's "justifiable expectation of privacy" in the instant case.

Even assuming that the appellant would have been entitled to a justifiable expectation of privacy had he been acting in good faith as Miss Hall's physician at the time of the interception, the undisputed evidence shows he

was not so acting at that time. On the contrary, the evidence shows that he was visiting Miss Hall on this occasion for the primary purpose of sexually molesting her after he had caused her to become unconscious as he had done on a previous occasion. His declared purpose of stopping by her apartment to leave her some medicine was a pretense and an unnecessary effort to place the medicine in her possession. Furthermore, all of the incriminating evidence produced by the State consisted of events that transpired after Miss Hall became unconscious when his conduct was completely unrelated to any physician-patient relationship. We therefore conclude that the video interception of the appellant's conduct did not amount to an unlawful invasion of his right of privacy under the Fourth Amendment.

Furthermore, even if we assume that the television transmittal was an invasion of the appellant's right of privacy, the admission in evidence of observations made as a result thereof would amount to no more than harmless error under the circumstances of this case. The testimony of Officers Robertson and Miller showed that when they entered Miss Hall's apartment with her previously given permission, they saw her lying on her back with the appellant on top of her. This direct observation was entirely sufficient in itself to justify the appellant's conviction for having committed an assault and battery upon her irrespective of the television observations. We therefore find that the evidence obtained by reason of the television transmittal was preliminary only and even if it was legally inadmissible, its admission in evidence over the appellant's objection was harmless error beyond a reasonable doubt in any event.[4]

The appellant's second claim under contention 13 involves the court's failure to suppress the evidence of the incident of February 25 on the grounds that no antece-

4. See *Chapman v. State of California*, 386 U. S. 18, 17 L.Ed.2d 705, 87 S. Ct. 824 (1967) for authority that an error involving a constitutional right must be shown to be harmless beyond a reasonable doubt to be held non-prejudicial.

dent judicial authority had been procured prior to conducting the surveillance in accordance with the requirements of Md. Code, Art. 27, § 125A. This statute provides:

> "(a) *Use without knowledge or consent prohibited.*—It is unlawful for any person in this State to use any electronic device or other device or equipment of any type whatsoever in such manner as to overhear or record any part of the conversation or words spoken to or by any person in private conversation without the knowledge or consent, expressed or implied, of that other person."

Sub-section (b) of the statute sets forth in substance that if the police wish to make such an interception, they must prior thereto obtain a court order authorizing it. It is clear from the language employed in sub-sections (a) and (b) that this statute was designed to prohibit the use of any equipment to overhear or record *any part of a conversation or words spoken in a private conversation* between persons without the knowledge or consent of the person whose conversation was being overheard or recorded unless a court order was first obtained authorizing the interception. We hold under the clear language of the statute that it does not apply to a video interception of private *conduct* of a person as opposed to *words spoken* in a private conversation. We therefore find no error in the court's denial of the motion to suppress the evidence on this ground.

The appellant's third claim under contention 13 concerns the failure of the State to have a video tape recording made of the picture viewed on the monitor on February 25. The State's evidence showed that the idea of using a video tape was abandoned by it because the only equipment of this kind that was possessed by the Police Department at the time was too bulky to be useful in the contemplated surveillance and the Department did not have the necessary expert personnel to operate it. Evi-

dence produced by the appellant showed that video tape equipment suitable for the surveillance in this case was available at the time in several stores located in and about Montgomery County. The audio part of the equipment used was not operative at the time. The appellant cites *Forrester v. State,* 224 Md. 337, and *Summons v. State,* 156 Md. 390, in support of his claim. *Forrester* held that a witness should not be permitted to testify to the contents of a tape recording without first establishing that the tape recording was not available. In *Summons* the Court held that secondary evidence could not be introduced without first showing that primary evidence known to be in existence was not available. Neither of the cited cases are apposite here since there was no primary evidence of the video transmittal, that is, a recording in existence at the time the persons who viewed the video transmittal testified. There is no rule of evidence which requires that a witness have a recording made of what he visually observes in order to make his testimony as to what he saw competent evidence. The so-called best evidence rule relates to documents and is ordinarily invoked where there is an attempt to substitute oral for documentary evidence or where proof is required of some fact of which there is a written record. See *Lamot v. State,* 2 Md. App. 378, 383.

We therefore hold that the failure of the State to record on video tape the events that transpired on February 25 did not make the testimony of State witnesses who actually viewed these happenings on the television monitor secondary evidence or otherwise inadmissible. We therefore conclude there was no error in admitting this testimony.

The appellant's fourth claim under contention 13 was to the effect that the failure of the State to make a video tape recording of the events on February 25 made the testimony of the viewing witnesses hearsay evidence and therefore inadmissible. "Hearsay" is defined in *Black's Law Dictionary* (4th Ed.) as follows:

"Evidence not proceeding from the personal

knowledge of the witness, but from the mere repetition of what he has heard others say. * * *"

The testimony of the witnesses who viewed the television monitor was that of persons who *saw* what transpired in Miss Hall's apartment and was not based in what someone had told them transpired. Obviously, their testimony was competent and the claim of hearsay is frivolous.

The appellant's fifth claim under this contention is that due to the failure of the State to record the events of February 25 on video tape he could only refute the State's claim as to what occurred on that date by testifying himself which in effect would make him a victim of compulsory self-incrimination. We are unable to follow this reasoning or to perceive how he could refute a video tape recording of the events that transpired on February 25 without taking the stand any more than he could refute the testimony of witnesses as to events revealed by the video transmittal. We conclude the claim is frivolous and without merit.

The appellant's sixth claim under contention 13 is that since Md. Code, Art. 27, § 555B requires the approval of the Attorney General before a telephone conversation with a State department or agency can be monitored or recorded by any State official or employee, it should have a similar requirement in respect to the right of the police to monitor or record the conduct of private citizens suspected of crime. He further contends that a failure of the statute to so provide deprives him of equal protection under the law. The conversations referred to in this statute are in an entirely different class from the private conversations or conduct of a person suspected of crime. In the first instance the interest sought to be protected is the public interest of the State; in the later instance the interest involved is the personal interest of an individual suspected of crime. The equal protection clause of the Fourteenth Amendment requires only that the law treat equally those persons who are in the same class

and under like circumstances. We hold that this constitutional provision did not require that private conversations or conduct of a person suspected of crime be treated equally with conversations with a State department or agency under this statute and therefore that claim is also without merit. See *Eggleston v. State, supra; Mullen v. Director, supra; Johnson v. State, supra.*

The appellant's seventh and last claim under contention 13 is that the wilful failure of the State to make and preserve a video tape recording of the events that occurred on February 25 is tantamount to a suppression of exculpatory evidence. Since there is no showing of any suppression by the State of any of the events seen as a result of the video television transmissions, it is difficult to follow the argument that if what the witnesses saw and testified to at the trial had been recorded additional evidence of an exculpatory character would probably have been revealed. There is no such proof in the record and an assumption to that effect is without foundation. We hold therefore that this claim is likewise without merit.

## XIV

The appellant's fourteenth contention asserts that the trial court erred in admitting in evidence over his objection the pants and top of the lounging suit worn by Miss Hall at the time the alleged crimes were committed inasmuch as the clothing had been washed since February 25. The assertion in the brief of the State that the clothing was not introduced in evidence is in error. The record shows the pants and top were introduced and marked State's exhibits 13A and 13B. There was no evidence that any stains existed on the clothing at the time of the incident or following it. Officer Miller testified that the clothing was in substantially the same condition at the time it was introduced as it was when he first saw it in Miss Hall's apartment immediately after the incident. It was not introduced to establish its condition immediately after the incident but rather to establish the type of cloth-

ing worn by the victim at the time of the alleged crimes. We hold therefore that there was no prejudicial error in the court's ruling admitting the clothing.

## XV

This contention asserts that it was error for the court to permit the jury to consider both counts one and two charging him with an attempt to commit rape and an assault with intent to rape since both crimes contain the same elements. He therefore contends that to subject him to both charges is tantamount to placing him on trial twice for the same offense and amounts to double jeopardy. Since the jury acquitted him on both counts, the question is moot. However, there is a difference in the essential elements of the two crimes and therefore the contention is without merit in any event.[5]

## XVI

Contention 16 alleges that the court erred in denying the appellant's motion for a judgment of acquittal on counts one (attempted rape) and three (assault and battery) on the grounds that they do not charge an offense since they are both common law crimes and the indictment alleges they were violations against the Acts of the Maryland General Assembly. This Court has held that even though the indictment be otherwise inexact or defective if all the elements of the crime are alleged, the indictment does charge an offense. See *Phenious v. State,* 11 Md. App. 385; *Baker v. State,* 6 Md. App. 148. In this case all elements of the crimes of attempted rape and assault and battery were alleged. We therefore hold that counts one and three did not fail to charge an offense. Furthermore, the words "contrary to the form of the Acts of Assembly in an indictment may be treated as surplusage." (See *Lutz v. State,* 167 Md. 12). We hold therefore that contention 16 is without merit.

5. We indicated in *Middleton v. State,* 6 Md. App. 380 that there is a difference in the essential elements of the crime of attempted rape and assault with intent to rape.

## XVII

Contention 17 alleges that the court erred in refusing the appellant's motion for a judgment of acquittal on all counts because the prosecutrix consented to the acts committed. Since the appellant was acquitted on counts one, two, and four, the contention is moot as to these counts. He was convicted on count three which charged assault and battery. In defining assault and battery, this Court in *Price v. State,* 5 Md. App. 127, quoting from *Clark and Marshall,* said at page 130:

> "* * * 'Any unlawful injury whatsoever, however slight, actually done to the person of another, directly or indirectly, in an angry, revengeful, rude or insolent manner is a battery. Every battery includes an assault * * *.' Clark and Marshall, *Crimes,* 6th Ed. § 10.19, p. 654; *Leatherberry v. State,* 4 Md. App. 300, 305; *Kist v. State,* 4 Md. App. 282."

See also 6 Am.Jur.2d, Assault and Battery, §§ 3, 5; 6 C.J.S., Assault and Battery, § 57(a) and (b); *Wharton's Criminal Law and Procedure,* §§ 329, 337.

It is clear from the above cited authorities that if the appellant, without the consent of Miss Hall, took indecent liberties with her while she was in an unconscious condition by placing his hands upon her, pulling her clothing from her body and getting on top of her, he thereby committed an assault and battery upon her. On the issue of consent the undisputed evidence showed that Miss Hall agreed to allow the appellant to inject a hypodermic needle in her arm. After this occurred she became unconscious. There was legally sufficient evidence to show that she had not consented to the conduct of the appellant toward her after she became unconscious. Therefore the trial court did not commit error in denying the appellant's motion for a judgment of acquittal made on the ground that the evidence showed Miss Hall had consented to the appellant's conduct toward her as a matter of law. Under this holding, we do not reach the

question of whether the victim's consent is a defense to the charge of assault and battery under the circumstances of this case.[6]

## XVIII

Contention 18 asserts that the court erred in overruling the appellant's objections and allowing the State to cross-examine his character witnesses by asking them if they knew he had been tried and acquitted of an abortion charge and an assault on a patient. In *Comi v. State,* 202 Md. 472 the Court of Appeals said at page 479:

> "* * * When the defendant's character, in the sense of reputation as distinguished from disposition, is thus put in issue, particular acts of misconduct which might affect his general reputation may be referred to as a test of the witness' credibility and the grounds of his belief. * * * In this connection, the cases indicate that no distinction is to be drawn between convictions and charges which result in acquittal, * * *."

The testimony given by the appellant's character witnesses on direct examination related to his general reputation in the community for peace, good order and moral character. Under the rationale and holding in *Comi,* we conclude that the above questions asked his character witnesses on cross-examination were within proper limits and appropriate. We find no error in the court's action overruling the appellant's objections to these questions. See also *Raimondi v. State,* 12 Md. App. 322.

## XIX

Contention 19 alleges that the court's refusal to desist from extended questioning of the State's witness after objection by the appellant denied the appellant due pro-

---

6. See Clark and Marshall, *Crimes* (7th Ed.), § 5.14 on consent of the victim as a defense to the charge of assault and battery.

cess of law. The questioning by the trial court to which the appellant objected involved Miss Hall's description of the position of the appellant's body while he was on top of her. When the witness failed to state with clarity the position of the appellant, the court asked some questions on the subject in an effort to clarify her testimony. In *Jefferies v. State,* 5 Md. App. 630, 632 this Court said:

> "* * * In *Madison v. State,* 200 Md. 1, 87 A. 2d 593 the Court of Appeals specifically affirmed the right of the trial judge to intervene into the questioning of witnesses. Although the number of questions asked by the trial judge in this particular case would exceed those normally asked by a trial judge this fact alone does not mean that Jefferies' trial was in any way unfair; * * *."

In *Stewart v. State,* 4 Md. App. 565, 570, this Court quoted from *Plank v. Summers,* 203 Md. 552, which set forth that the trial court has "the widest discretion" in the conduct of a trial and that "this discretion should not be disturbed unless it is clearly abused."

We hold the trial judge did not clearly abuse his discretion in the instant case in overruling the appellant's objection to his questioning of the witnesses.

## XX

In contention 20 the appellant complains that the court's statement to the jury indicating they would be sequestered for the night if they did not reach a verdict within two hours in effect exerted undue pressure upon them and deprived him of due process. The record shows the following transpired between the court and jury at about 5:30 p.m. Judge Mathias called the jury into the courtroom, reminded them they had been deliberating for three and one-half hours, and inquired of the Foreman whether there was any reasonable expectation of reaching a verdict within a reasonable time. The Foreman answered in the negative. The judge then inquired

how many of the jurors believed that a verdict could be reached within three-quarters of an hour. He received no response. He then inquired how many believed a verdict could be arrived at within two hours. There was no response. The judge then made the following remarks:

> "Well, it looks to me as if we ought to make arrangements to have you all go back to the Holiday Inn and stay for the night and come back tomorrow morning and resume your deliberations, unless you feel that you could reach a verdict within a couple of hours.
>
> A couple of hours from now would be 7:30 or 8:00 o'clock at night.
>
> We might send you out to dinner now or in a few minutes, if you think that would be agreeable.
>
> Do you think maybe that would help you reach a verdict?
>
> Why don't you, Mr. Foreman, I'm going to ask you to take the jurors back and hold a caucus now.
>
> Alternatives are to continue to deliberate for another—well, continue to deliberate now; number two, go out to dinner now and come back and deliberate; number three, adjourn now or recess now for the day, go back to the Holiday Inn, spend the night, not deliberate, not even discussing the case, just go back there and stay, have dinner and spend the night, and then come back tomorrow morning and resume your deliberations at 9:30.
>
> Take the jurors back in the jury room and hold a caucus.
>
> (After jury returned)
>
> I have a note, too, that you wish to continue to deliberate for a couple of hours.
>
> The Court will permit you to deliberate. We suggest that, perhaps you might want to have sandwiches and coffee sent in.

If you wish to do that, you make out your order, and we will send the bailiff or the sheriff out to get you some sandwiches.

However, if you do not reach a verdict within a couple of hours, I will make arrangements to again have you lodged at the Holiday Motel, and bring you back tomorrow morning to continue your deliberations.

You may retire to resume your deliberations, and if you want to make a list of what you want the clerk to bring in for you to eat, just pass the list out.

(Whereupon, at 5:55 p.m., June 15, 1971, the jury retired to continue its deliberations)"

At approximately 7:30 p.m. the jury returned with a verdict. We hold that the trial judge did not, in the circumstances, threaten or tend to coerce the jury into reaching a verdict.

## XXI

Contention 21 involves a claim by the appellant that the court erred in failing to grant his motion for a mistrial immediately after the jury returned a finding of guilty on both counts three and four. These counts included a charge of assault and battery and assault, respectively. The record shows that upon the return of these verdicts the judge reminded the jury he had previously instructed them they could find the appellant guilty of any one of the four counts in the indictment but could not find him guilty on more than one count. Thereupon, the jurors were directed to again retire and reconsider their verdict which they did and thereafter returned a verdict of guilty on the third count only, which was duly recorded. There is no evidence which tends to show that in taking this action the judge attempted in any way to improperly influence the jury as to what their ultimate verdict should be. We therefore conclude there was no error in the court's directing the jury to reconsider the verdict.

## XXII

Contention 22 involves the trial court's denial of the appellant's motion for a new trial duly filed after the rendition and acceptance of the verdict. The general rule is firmly established that the granting of a new trial lies within the sound discretion of the trial court and is not ordinarily reviewable by this Court. See *Elder v. State,* 7 Md. App. 368, 373; *Oliver v. State,* 8 Md. App. 610, 618; *Adams v. State,* 8 Md. App. 684, 693. The action of the court in denying the motion will therefore not be disturbed.

*Judgment affirmed.*
*Costs to be paid by appellant.*